UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| IN RE: STEVEN C. FUSTOLO, <br><br>Debtor. <br><br>50 THOMAS PATTON DRIVE, LLC and THE PATRIOT GROUP, LLC, <br><br>                    Plaintiffs <br>v. <br><br>STEVEN C. FUSTOLO, <br><br>                    Defendant | Chapter 7 <br><br>Case No.: 13-12692-JNF <br><br>AP No.: 14-01193-JNF |

**MEMORANDUM IN SUPPORT OF THE PATRIOT GROUP, LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNT IV AND UNDER
11 U.S.C. § 727(a)(4)(A) AGAINST DEFENDANT/DEBTOR STEVEN C. FUSTOLO**

**INTRODUCTION**

Pursuant to Fed. R. Bankr. P. 7056, creditor The Patriot Group, LLC ("Patriot") respectfully moves for partial summary judgment against Defendant/Debtor Steven C. Fustolo ("Fustolo" or "Debtor") pursuant to Count IV of the Complaint and 11 U.S.C. Section 727(a)(4)(a) for knowingly and fraudulently making a false oath in connection with the filing of his Chapter 7 bankruptcy (No. 13-12692-JNF) Schedule of Assets and Liabilities. Specifically, Fustolo's Amended Schedule B, dated August 14, 2014, identified under the penalty of perjury a whistleblower recovery of an "unknown" value.[1] In various pleadings filed with this Court, Fustolo represented that he had filed the Whistleblower Claims against Patriot with the Internal Revenue Service ("IRS") and Securities and Exchange Commission ("SEC") for Patriot's alleged tax fraud. As detailed below, however,

---

[1] In line 21 of Amended Schedule B – Personal Property ("other contingent and unliquidated claims of any nature"), Fustolo listed "possible whistleblower recovery" (herein, the "Whistleblower Claims").

the undisputed evidence is that Fustolo's so-called Whistleblower Claims <u>do not exist</u>, were never filed, and were concocted by Fustolo to gain leverage in the bankruptcy proceedings.

To date, Fustolo has never produced copies of the purported claims, and there is no credible evidence that Fustolo actually filed anything with the IRS or SEC. Further, when questioned under oath, Fustolo, a tax expert and highly sophisticated professional, could recall no details about the alleged claims, including when they were filed, whether he communicated with Patriot about the claims, or <u>any</u> <u>facts</u> whatsoever to support his bald assertions of Patriot's alleged tax fraud.

By letter dated May 9, 2014, Fustolo's attorney advised Patriot's counsel that Fustolo had filed whistleblower claims with the IRS and SEC. Fustolo's counsel, however, admitted under oath that the May 9th letter was sent (on the very day of Fustolo's scheduled Section 341 meeting of creditors) because Fustolo "was afraid that he was going to be bullied in the course of the hearing and he wanted to put parties on notice that he was entitled to some anti-retaliation protection under various federal statutes . . . ." Furthermore, Fustolo's counsel has <u>no</u> <u>documents</u> concerning the purported claims and could not recall any subsidiary facts about Patriot that purportedly constituted tax fraud.

On January 30, 2015, this Court ordered Fustolo to remove certain internet postings asserting that Patriot was being investigated for tax fraud, securities fraud, and securities law violations. <u>See</u> No. 15-01015-JNF, ECF 32. In doing so, the Court found, among other things, that Patriot had ". . . demonstrated that the egregious public statements [including that Patriot was under investigation by the SEC and IRS] made by the Defendant in the website and blogs are **<u>false</u>** . . . ," and noted that the timing of Fustolo's actions ". . . appear to be coordinated with crucial dates arising in the Debtor's bankruptcy case, namely the deadline to file complaints seeking denial of or exceptions to the Debtor's discharge." <u>The Patriot Group, LLC v. Steven Fustolo</u>, Case No. 15-

01015-JNF (D. Mass.), ECF 31 at 9 (emphasis added).[2] This Court's own findings and the undisputed material facts regarding the alleged whistleblower claims have <u>not</u> <u>changed</u>. In short, beyond a vague self-serving statement that filings were made with the SEC and IRS (at an unknown time, in an unknown way) and Fustolo's demonstrably false cyber campaign,[3] there is absolutely no evidence that the claims exist. The dearth of evidence confirms the Schedules are false. Consequently, this is a textbook Section 727(a)(4)(A) false oath case and partial summary judgment should be granted.

## **UNDISPUTED MATERIAL FACTS**[4]

1. Debtor Steven Fustolo is a tax law expert. He is a partner with the Boston CPA firm of James J. Fox & Company and Director of the National Tax Institute, Inc. Specifically, he claims to have substantial expertise in the area of tax reporting and is a frequent lecturer and author on various tax and accounting issues. (¶¶ 1-2).

2. On May 6, 2013, the Petitioning Creditors 50 Thomas Patton Drive LLC, Patriot, and Richard Mayer filed an involuntary petition for relief against Fustolo, pursuant to Chapter 7 of the Bankruptcy Code. (¶ 3).

3. Patriot is an unsecured creditor of the Debtor, with a claim of approximately $25,756,305.33. (¶ 4).

---

[2] In March 2015, Fustolo produced two documents that purport to be letters from the IRS and SEC. The copies are of such poor quality that they are almost impossible to read, lack critical claim information, and appear to be copied from forms posted on the internet. These documents (dated May and July 2014, respectively) were produced by Fustolo in March 2015, <u>after</u> the Section 341 meeting of creditors concluded in July 2014, <u>after</u> his Rule 2004 examination in August 2014, and were buried among voluminous documents produced in response to the Court's Order compelling the production of other documents.

[3] The false statements in Fustolo's cyber campaign were just another way for him to give credence to the Whistleblower Claims. By making anonymous and quasi-anonymous false statements and disseminating false information, Fustolo sought to convey that whistleblower claims had, in fact, been filed against Patriot.

[4] Pursuant to Local Rule 56.1 of the United States District Court of Massachusetts (applicable here via the Bankruptcy Court Local Rules), a full recitation with citations to the undisputed material facts and exhibits are contained in the accompanying Statement of Undisputed Material Facts ("SMF"). References to "¶___" herein are to the corresponding

4. On January 17, 2014, Fustolo filed Schedules A, B, C, E, G, H, I, J, Summary of Schedules, Statement of Financial Affairs, and Amended Schedules D & F. There is no "possible whistleblower recovery" listed on Fustolo's *original* Schedule B. (¶¶ 5-6).

5. On May 7, 2014, Fustolo sent an email to his counsel, Bruce Edmands, stating "today or tomorrow" that he would be "filing with the IRS and will be filing with the SEC's Office of the Whistleblower under Dodd-Frank." In other words, as of May 7, 2014, Fustolo concedes that he had not filed any claims with the IRS or the SEC. (¶¶ 8-9).

6. On May 7, 2014, Fustolo also forwarded a draft of a letter he authored for Edmands' signature addressed to Patriot's counsel alleging that Patriot was abusing the bankruptcy proceedings as a means to retaliate against him for reporting Patriot's tax fraud. (¶ 10). Edmands agreed to assist Fustolo in finishing the letter because of "time constraints," i.e. - - that on May 9, 2014, Fustolo was scheduled to testify at the continued Section 341 meeting of creditors. (¶ 11).

7. According to Edmands, Fustolo wanted to send the letter prior to the Section 341 examination and invoke some anti-retaliation provisions in the SEC and IRS statutes. (¶ 12). Fustolo was afraid that he was going to be "bullied" at the Section 341 hearing and he wanted to throw Patriot's attorney "off his game." (¶ 13).

8. On May 9, 2014, Edmands sent a letter to Patriot entitled "Whistleblower Notification." The letter states that Fustolo has filed a claim against Patriot with the IRS and notice with the SEC. (¶¶ 14-15). The letter provides in pertinent part:

> The purpose of this letter is to inform you and your clients, The Patriot Group LLC, Old Hill Partners Inc. (as successor to Patriot Group) (hereinafter "Patriot") that **Steven Fustolo has filed a claim against Patriot in accordance with the Internal Revenue Service Whistleblower statute, Section 7623 of the Internal Revenue Code.** Mr. Fustolo's IRS filing may also affect Patriot's members, investors, and affiliated off-shore entities and funds.

---

paragraphs in the SMF.

> Additionally, **Mr. Fustolo has filed a notice with Security [sic] and Exchange Commission's Office of the Whistleblower**, identifying himself as a whistleblower in respect to Patriot pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank). Moreover, Mr. Fustolo anticipates the possibility of filing additional claims regarding Patriot under other federal and state whistleblower statutes.
>
> **Having previously informed a Patriot representative of his intention to notify the Internal Revenue Service of Patriot's alleged tax fraud, Mr. Fustolo has come to believe and now alleges that Patriot and its principal, John Howe, abused and will continue to abuse the bankruptcy proceedings as a means to retaliate against him for reporting Patriot's tax violations**.
>
> More particularly, **Mr. Fustolo alleges that with advance knowledge of Mr. Fustolo's pending IRS filings, Patriot and John Howe, personally, embarked on a campaign to harass and intimidate him and destroy his reputation by filing a petition for involuntary bankruptcy under Section 303(b) of the Bankruptcy Code.** In doing so, Patriot also conspired with two other creditors whom you represent, 50 Thomas Patton Drive, LLC and Richard Mayer, who joined Patriot in filing the involuntary bankruptcy petition which is currently pending against Mr. Fustolo in the United States Bankruptcy Court in Massachusetts.
>
> **Mr. Fustolo believes that the petitioners filed bankruptcy petition and prosecuted their claims in bad faith in violation of anti-retaliatory provisions of the whistleblower protections referenced above.**

(¶ 16) (Emphasis added).

9.      On August 14, 2014, after the conclusion of the Section 341 meeting of creditors, Fustolo filed an Amended Schedule B under the pains and penalties of perjury (No. 13-12692-JNF, ECF 172) in which he listed among his assets "claims" involving "possible whistleblower recovery" to which he ascribed an "unknown" value. (¶ 17).

10.     Fustolo thereafter filed pleadings with this Court specifically stating that he had filed whistleblower claims with the IRS and the SEC and that he expected to be rewarded by these agencies for his whistleblower complaints. (¶ 18).

11.     Fustolo represented to the Court that he stood to recover at least fifteen to twenty-five percent of any amounts of unpaid taxes identified by the IRS in excess of $2 million. (Id.).

5

12. If bona fide, the Whistleblower Claims would have represented Fustolo's single largest personal property asset by a wide margin. Indeed, according to his Financial Schedules, Fustolo only had $6,584 in personal property assets at the time the Schedules were filed. (¶¶ 19-20).

13. On August 27, 2014, during his Rule 2004 Examination, Fustolo was questioned extensively concerning the Whistleblower Claims raised in the May 9, 2014 letter, which he had sent to Patriot a mere three months earlier. (¶ 21).

14. During the examination, Fustolo testified that he did not have a copy of anything he sent to the IRS or SEC and had no notes or documents whatsoever to substantiate that he actually filed the Whistleblower Claims. (¶ 22).

15. Incredibly, Fustolo, a highly experienced CPA and tax expert, could not recall <u>any facts</u> supporting the allegations of tax fraud that supposedly formed the basis of the Whistleblower Claims. Indeed, when directly asked about his claims, Fustolo testified:

> Q. What is the complaint or the claim, I'm sorry, that you filed against Patriot with the Internal Revenue Service?
>
> A. Mr. Fencer, I supplied all documents in connection with my whistleblower filing to the Internal Revenue Service and the SEC, retained none of the filings, did not retain a copy, and embedded in all those filings was all the information in connection with this claim.
>
> Q. But I'm not asking you for the documents here today or what they said. I'm asking you what claim you filed against Patriot with the Internal Revenue Service.
>
> A. <u>All the information on that claim is in there. I'd have to have that information in front of me to refresh my memory</u>.
>
> ***
>
> Q. What do you allege that Patriot did to violate what is denominated here as the Dodd-Frank Act?

6

> A. <u>The same thing. It's in all the documents that were supplied to the SEC, Mr. Fencer</u>.
>
> \*\*\*
>
> Q. So sitting here today, are you able to tell me anything that Patriot either did do or did not do that was either prohibited by or required by Dodd-Frank?
>
> A. <u>I don't have the documents to make that statement. I don't have them with me to refresh my memory of what they were</u>.

(¶¶ 1-2, 23).

16. Fustolo also could not recall <u>when</u> he allegedly filed his claims with the IRS and SEC or the <u>contents</u> of his filings with the IRS and SEC. (¶ 24).

17. Despite Fustolo's allegations that Patriot's filing of the involuntary bankruptcy petition was in retaliation for his whistleblower activities, when examined under oath, Fustolo could not even recall whether he had advised Patriot of the filing of his whistleblower reporting:

> Q. Did you convey your intention to report Patriot to the Internal Revenue Service orally to anyone at Patriot?
>
> A. I don't recall.
>
> Q. Did you report or inform a representative of Patriot of your intention to notify the Internal Revenue Service of this alleged tax fraud in writing?
>
> A. I don't recall.

(¶ 25).

18. Similarly, Fustolo's counsel, Edmands, testified that he did not have copies of the Whistleblower Claims, or <u>any documents</u> concerning the Whistleblower Claims. (¶ 26).

19. Edmands could not recall <u>any details or subsidiary facts</u> supporting the allegations of tax fraud. (¶ 27).

20. Edmands further admitted that he did not independently verify any aspect of the bases for the purported claims; rather, he relied solely on Fustolo because Fustolo is an "expert in

7

tax, has written nine books on the subject, and has lectured extensively." (¶ 28).

## ARGUMENT

### I. SUMMARY JUDGMENT UNDER SECTION 727(a)(4) IS APPROPRIATE

Motions for summary judgment in adversary proceedings are "governed by the same standards applicable to motions under Fed. R. Civ. P. 56." In re Staley-Snow, 405 B.R. 11, 17 (B.A.P. 1st Cir. 2009); Fed. R. Bankr. P. 7056. Summary judgment is therefore appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e); Desmond v. Varrasso, 37 F.3d 760, 763 (1st Cir. 1994) (applying Rule 56 standard).

The "mere existence of some alleged factual dispute between the parties," however, "will not defeat an otherwise properly supported motion for summary judgment: the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Further, where the movant has produced "overwhelming" basic evidence to support its asserted fact or reasonable inference therefrom, and the respondent has failed to produce significantly "probative" evidence countering those facts and reasonable inferences, the Court may accept the movant's interpretation of the facts in granting summary judgment. See First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 285-286 (1968); In re Tully, 818 F.2d 111, 118 (1st Cir. 1987) (affirming summary judgment). Bald denials or generalized recollections unsupported by facts (such as those offered by Fustolo) cannot defeat summary judgment. Miller v. Solem, 728 F.2d 1020, 1024 (8th Cir. 1984), cert. den., 469 U.S. 841 (1984) (conclusory assertions of ultimate fact are accorded little weight at summary judgment). As explained below, the undisputed material facts here warrant granting Patriot's motion for summary judgment.

### A. Discharge Must Be Denied Under 11 U.S.C. § 727(a)(4)(A)

It is well established that a "debtor's Schedules and Statement of Financial Affairs are the

8

equivalent of a verification under oath." Perry v. Warner, 247 B.R. 24, 26 (B.A.P. 1st Cir. 2000). A debtor's false statements or misrepresentations in bankruptcy financial schedules constitute a false oath under § 727(a)(4)(A) because those documents are signed "under the penalty of perjury." In re Grondin, 232 B.R. 274, 276 (B.A.P. 1st Cir. 1999); In re Sowers, 229 B.R. 151, 158 (Bankr. N.D. Ohio 1998) (granting summary judgment).[5] A debtor, like Fustolo, is not entitled to a discharge if he "knowingly and fraudulently, in or in connection with the case - - (a) made a false oath or account with respect to his schedules." § 727(a)(4). Under subparagraph (A):

> The plaintiff must, by a preponderance of the evidence, establish that (i) a bankruptcy proceeding existed under the Bankruptcy Code; (ii) the debtor/defendant made one or more statements relating to the proceeding; (iii) the statement or statements were given under penalty of perjury; (iv) the statement related to material matters to the administration of the bankruptcy case, such as the debtor's assets and liabilities; (v) the statement was false; (vi) and the statement was made knowingly and fraudulently by the debtor, or with reckless disregard for the truth.

11 U.S.C. § 727 (a)(4)(A).

In other words, "to trigger section 727(a)(4)(A), the false oath must relate to a material matter and must be made willfully with intent to defraud." Tully, 818 F.3d at 106; Perry v. Warner, 247 B.R. 24, 26 (B.A.P. 1st Cir. 2000); In re Davison, 296 B.R. 841, 847 (Bankr. D. Kan. 2003) (granting summary judgment) aff'd, No. 01-23974-7, 2004 WL 2852352 (B.A.P. 10th Cir. June 29, 2004).

As detailed herein, Fustolo's identification of the Whistleblower Claims in his August 2014 Amended Schedule B constitutes a false oath and, as such, summary judgment regarding non-dischargability is appropriate.

---

[5] In re Mathern, 137 B.R. 311, 318-26 (Bankr. D. Minn. 1992) (granting summary judgment).

### 1. **The Whistleblower Claim Is Material**[6]

Under Section 727(a)(4)(A), the threshold for "materiality" is "fairly low." In re Sullivan, 455 B.R. 829, 830 (B.A.P. 1st Cir. 2011) (affirming summary judgment). "The real question is whether the omitted or falsely-represented asset bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." Id. at 839; Mathern, 137 B.R. at 318-26 (assets of even "questionable" value satisfy the materiality element when they impact the bankrupt's assets, liabilities and concern the "existence" of property) (citations omitted).

Here, the Whistleblower Claims are "material" to the bankruptcy proceeding for at least two reasons. First, by including the Whistleblower Claims, Fustolo falsely represented that he had an asset that he actually does not have. Where a debtor creates such a false impression, a court may rightly deny a discharge. See In re Chavin, 150 F.3d 726, 728 (7th Cir. 1998) (non-discharge affirmed because debtor's representation created a false impression regarding his estate); In re Cline, 48 B.R. 581, 584-85 (Bankr. E.D. Tenn. 1985) (denying discharge when debtor listed their secured debt as significantly higher than it was, giving the false impression that certain property was fully encumbered). Moreover, courts routinely find financial schedule manipulation to "materially" affect the estate and satisfy Section 727(a)(4)(A). See In re Adamo, No. 06-12077-JNF, 2008 WL 1711401, at *7 (Bankr. D. Mass. Apr. 11, 2008) (granting summary judgment and stating the "very purpose" of Section 727(a)(4)(A) is to ensure debtor does not play "fast and loose" with his assets); Tully, 818 F.2d at 110 (same); In re Leffingwell, 279 B.R. 328, 349-50 (Bankr.

---

[6] It is well settled that a cause of action is property of a debtor for Chapter 7 proceeding purposes. See In re Riccitelli, 320 B.R. 483, 488-89 (Bankr. D. Mass. 2005) (an unliquidated claim is property under Section 541 of the Bankruptcy code). As explained herein, there is no question that the possible Whistleblower Claims were invoked in the Chapter 7 bankruptcy proceeding and that they relate to the Chapter 7 proceeding. See ¶¶ 8-25; In re Calder, 907 F.2d 953, 955 (10th Cir.1990) (false information in schedules satisfies first two elements of Section 727(a)(4)(A)); In re Chalik, 748 F.2d 616, 618 n.1 (11th Cir. 1984) (same); Farmers Co-operative Assn' v. Strunk, 671 F.2d 391, 395 (10th Cir.1982) (same); In re Graham, 111 B.R. 801, 806 (Bankr. E.D. Ark.1990) (same).

M.D. Fla. 2002) (same).

Second, the financial impact of the Whistleblower Claims on the value of Fustolo's estate (had they been true) would have been significant. Fustolo represented to the Court that he stood to recover at least fifteen to twenty-five percent of any amounts of unpaid taxes identified by the IRS in excess of $2 million. See No. 13-12692-JNF, ECF 200 at ¶ 11; see also 26 U.S.C. § 7623 (IRS authorized to provide cash awards to whistleblowers equal to thirty percent of all collected unpaid taxes and penalties).[7] While Fustolo currently reports that he has no sizeable assets, the Whistleblower Claims would have been the largest possible source of funds for his estate. (¶¶ 17-20). The potential magnitude of the purported claims alone (if they actually existed) is also material.

In sum, the Whistleblower Claims are "material" under Section 727(a)(4)(A).

### 2.  There Are No Whistleblower Claims

Fustolo's assertion that he has Whistleblower Claims is false - - there is <u>no</u> credible evidence to substantiate the claims' existence. Specifically, in his May 9, 2014 letter, Fustolo states: (a) he <u>filed</u> notices or claims with the IRS and the SEC under their applicable whistleblower provisions; (b) the protected activity consisted of informing an unnamed "Patriot representative" that Patriot was engaged in tax fraud; and (c) the bankruptcy proceeding constitutes "retaliation" against Fustolo for raising the tax fraud issue to Patriot's attention. (¶¶ 14-16).

Fustolo, however, cannot, as a basic matter, demonstrate that he actually contacted the IRS or the SEC to make the claims. (¶¶ 21-25). He has <u>no</u> contemporaneous documents, notes, communications, or any credible evidence to show that he actually filed something with the IRS or

---

[7] In his 2004 Examination, Fustolo admits that there "would be potential whistleblower award." (¶¶ 24, at 196-97). Fustolo also filed pleadings with the Court explaining that the Whistleblower Claims are financially significant. (¶¶ 17-20).

11

SEC. (Id.).[8] His bare assertion that he did so is not entitled to weight at summary judgment -- particularly in light of the entire record. Miller, 728 F.2d at 1024 (bald denials cannot defeat summary judgment).

Indeed, when questioned about the claim, Fustolo had no answers to even the simplest questions about his purported Whistleblower Claims:

- He could not remember when he filed his notices with the IRS or the SEC, claiming he could have done so as early as January 2014 (¶ 24 at 198-99);

- He could not answer any questions regarding the substance of his report to the IRS or SEC, including what Patriot did to violate any law (¶ 24 at 194-96, 199-200);

- He could not identify anyone at Patriot with whom he purportedly communicated about the alleged tax violations (¶ 25); and

- He could not even identify the timing or method (written or oral) through which he informed Patriot about tax violations (¶¶ 24-25).

The only response Fustolo has to offer is to refer to documents that he does not have, and do not exist. (¶¶ 21-25 at 202) ("It's embedded in all the documents . . . that were supplied to the IRS. I have kept no notes and no documents that would refresh my memory on this.").[9] It is wholly implausible that Fustolo, a tax expert, CPA and experienced professional, would remember no details about such a serious and significant allegation (tax fraud) for which he had to seek statutory whistleblower protection from two governmental agencies, the IRS and SEC. See Chavin, 150 F.3d at 728 (debtor's answers were so implausible that they justified summary judgment denying discharge).

The deposition of Fustolo's attorney, Bruce Edmands, further confirms the falsity of the

---

[8] For example, Fustolo allegedly "faxed" his notice to the SEC, yet there is no copy or electronic confirmation that he actually sent the fax. (¶¶ 26-31).

[9] Fustolo's testimony on his alleged Whistleblower claims is circular: (1) he cannot answer any questions about making his claims without the documents he gave to the IRS and SEC; and (2) he does not have a copy of the documents he gave to the IRS and SEC. (¶¶ 21-25).

alleged claims. Indeed, he testified that:

- He did no investigation concerning the merits of the alleged whistleblower claims (¶ 28);

- He has no information or knowledge about the basis for the alleged whistleblower claims (¶ 29);

- He and his firm have no documents or other information that can confirm the claims were actually filed (¶ 26); and

- He is unaware of any legal basis for claiming that putting a person into bankruptcy could constitute retaliation under any whistleblower statute (¶ 30).

In short, the undisputed material facts confirm that the claims do not exist and, therefore, Fustolo's inclusion of the Whistleblower Claims on his August 2014 Schedule B constitutes a false oath.[10]

### 3.  **Fustolo Knowingly and Fraudulently Made a False Oath**

"Because a debtor is unlikely to admit directly that his intent was improper, courts may look to circumstantial evidence and draw inferences from a course of conduct to establish that the debtor acted with fraudulent intent." In re Donahue, B.A.P No. NG 11-026, 2011 WL 6737074, at *12-13 (1st Cir. Dec. 20, 2011) (affirming summary judgment) (citing In re Lang, 246 B.R. 463, 468 (Bankr. D. Mass. 2000), aff'd, 256 B.R. 539 (B.A.P. 1st Cir. 2000).

Here, Fustolo not only references the claims in his August 2014 Amended Schedule B, but also represents to the Court that he filed these claims with the SEC and IRS.[11] (¶¶ 17-18). However, the absence of evidence to corroborate even the existence of the alleged Whistleblower Claims, as explained above, creates an inference of fraudulent intent. See Adamo, 2008 WL 1711401, at *7 (back-filling the record with affidavits cannot substitute for evidence to support the otherwise false oath). The inference of fraud is also particularly strong considering (a) Fustolo's

---

[10] The burden now is on Fustolo to come forward with evidence that demonstrates his oath was not false. See Matter of Mascolo, 505 F.2d 274, 276 (1st Cir. 1974).

[11] See, e.g., No. 13-12692-JNF, ECF 173; 200 ¶¶ 7-11; 227 ¶¶ 3-7.

business sophistication and tax savvy (he is a CPA and purports to be a tax expert) (¶¶ 1-2) and (b) the nature of the alleged basis underlying the whistleblower claim (tax fraud). See Donahue, 2011 WL 6737074, at *13 ("The Donahues [like Fustolo] are not unsophisticated in financial affairs") (affirming denial of discharge). Indeed, one would think Fustolo would be well-armed with data and documents to substantiate his claims (whereas, the opposite is true).

Further, Edmands testified that Fustolo had ulterior motives for sending the May 9, 2014 letter and listing the claims: (a) to avoid "bullying" at the Section 341 meeting; (b) to invoke so-called protections of the whistleblower statutes to obtain an advantage in the proceeding; and/or (c) to attack his single largest creditor, Patriot. (¶¶ 12-13). The existence of ulterior motives further underscores the fraudulent intent. In re Carl, 517 B.R. 53, 65 (Bankr. N.D.N.Y. 2014) ("ulterior motive" is evidence of fraudulent intent).[12]

As such, the only reasonable inference from the threadbare record is that Fustolo knowingly concocted the claims and falsely identified them on Schedule B. See In re Bailey, 145 B.R. 919, 927 (Bankr. N.D. Ill. 1992) (denying discharge under Section 727(a)(4)(A)) ("[T]he evidence points more strongly to the conclusion that the mechanic's lien was concocted out of whole cloth."); Leffingwell, 279 B.R. at 357 (denying discharge) (noting that debtor "concocted" an elaborate and false story). Patriot's motion for summary judgment, therefore, should be granted.

---

[12] Fustolo has a documented history of making false statements with ulterior motives in order to influence this bankruptcy proceeding. As the Court is well aware, Fustolo engaged in an online campaign to harass Patriot and manipulate the Chapter 7 case, which included allegations that Patriot was being investigated by both the IRS and SEC. Fustolo never denied publishing false information about Patriot, and in response to questions about these efforts during his contempt hearing, he asserted his Fifth Amendment right against self-incrimination twenty-eight (28) times. See No. 15-01015-JNF, ECF 65 at 19-46. The Whistleblower Claims were likewise an attempt to intimidate creditors and impact the bankruptcy proceeding.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Patriot's Motion for Partial Summary Judgment on Count IV and under Section 727(a)(4)(A) should be granted and the Debtor's discharge denied.

Respectfully submitted,

ATTORNEYS FOR THE PATRIOT GROUP, LLC,

By: /s/ Jack I. Siegal
Michael Paris (BBO#556791)
mparis@nbparis.com
Joel G. Beckman (BBO#553086)
jbeckman@nbparis.com
Jack I. Siegal (BBO#669173)
jsiegal@nbparis.com
**NYSTROM BECKMAN & PARIS LLP**
One Marina Park Drive, 15th Floor
Boston, MA  02210
T: (617) 778-9100
F: (617) 778-9110

DATED:  June 15, 2015

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 15th day of June, 2015.

/s/ Jack I. Siegal