UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~

In re
**STEVEN C. FUSTOLO**,                                    Chapter 7
    Debtor                                             Case No. 13-12692-JNF

~~~~~~~~~~~~~~~~~~~~~~

**50 PATTON DRIVE, LLC, and**
**THE PATRIOT GROUP, LLC**,

    Plaintiff
v.                                                        Adv. P. No. 14-1193
**STEVEN C. FUSTOLO**,
    Defendant

~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I.    INTRODUCTION**

The matter before the Court is the Motion of The Patriot Group, LLC ("Patriot") to Compel the Defendant Steven C. Fustolo ("Fustolo" or the "Debtor") to Produce Documents and Agreed Upon Motion to Extend the Discovery Deadline to Complete Debtor's Deposition. Pursuant to Fed. R. Civ. P. 37, Bank. P. R. 7037, and Local Rule 7037-1, Patriot seeks to compel Fustolo to produce "(a) emails responsive to Patriot's First Request for Production of Documents (the "First Set") and (b) up to date bank account statements and other financial records through 2015 for each of the entities Fustolo controls." Specifically, Patriot requests an order compelling Fustolo to produce certain

1

emails immediately or otherwise grant it access to them directly from Fustolo's account provider, American Online ("AOL").  Patriot also seeks documents updating Fustolo's bank records and other account information, which he previously produced, "for the remainder of 2014 and through the present date" because Fustolo employed an arbitrary cut-off date of December 2014 and has refused to produce any updated financial information. In Patriot's view, the requested updated bank records will expose Fustolo's alleged postpetition wasting of bankruptcy estate assets which it maintains is relevant to certain counts in its adversary complaint under 11 U.S.C. §§ 727(a)(2)(B), (a)(3), (a)(5).

The Debtor opposed Patriot's Motion and filed a Cross-Motion to Quash the Second Request for Production of Documents; Patriot filed a Reply.  The Court heard Patriot's Motion, the Opposition, and the Motion to Quash on December 2, 2015.  At the hearing, Patriot requested that Fustolo provide it with a log of all emails and documents he asserts are protected by his right against self-incrimination under the Fifth Amendment to the United States Constitution, and Fustolo's criminal defense counsel, who was present at the hearing, challenged Fustolo's ability to provide such a privilege log without waiving his Fifth Amendment rights.  In light of these issues and the parties' dispute over the email provider's email retention policies, the Court directed Fustolo's counsel to research AOL's email retention policies and file a supplemental response by December 3, 2015 at 3:00 p.m.[1] The Court also authorized Patriot's counsel to file a response to Fustolo's supplemental response within 24 hours.  Patriot filed a Response

---

[1] In his Supplemental Opposition, Fustolo limited his arguments to AOL's email policies and did not further address the Fifth Amendment waiver issues.

2

on December 4, 2015 addressing the AOL email retention policies and renewing its request that Fustolo provide it with a catalog of documents and emails he is withholding on Fifth Amendment grounds.

## II. DISCUSSION

### A. Background

Patriot is the holder of a claim in the amount of $25,756,305.33 arising from a judgment entered against the Debtor by the Middlesex Superior Court, Department of the Trial Court. Together with other creditors, it filed an involuntary petition against the Debtor on May 6, 2013. The Court entered an order for relief on December 16, 2013. Total claims in the Debtor's case exceed $45 million.

Patriot, together with 50 Thomas Patton Drive, LLC ("Patton Drive"), filed a Complaint against Fustolo on September 30, 2014. On October 28, 2015, Patton Drive filed a Motion of Co-Plaintiff 50 Thomas Patton Drive, LLC to Dismiss Its Claims, noting that in Counts I through V of the Complaint both Patton Drive and Patriot objected to the Debtor's discharge, that in Counts VI and VII of the Complaint Patton Drive sought a determination that its claims against the Debtor are not dischargeable in bankruptcy (the "Patton Drive Claims"), while in Count VIII of the Complaint Patriot sought a similar determination concerning its own claims against the Debtor. Thus, only Counts I through V and VIII are before the Court.

### B. The Complaint

In its Complaint, Patriot alleged, among other things, that the Debtor signed a personal guaranty for the full and timely repayment of certain indebtedness to Patriot

3

advanced as loans for the development and improvement of real property located at 145 rear Revere Beach Boulevard, 147 rear Revere Beach Boulevard, 546 Revere Beach Boulevard, 527 Revere Beach Boulevard, 530 Revere Beach Boulevard, 532-534 Revere Beach Boulevard, 536 Revere Beach Boulevard, 538-540 Revere Beach Boulevard, 542-544 Revere Beach Boulevard, and 543-546 Revere Beach Boulevard (collectively the "Revere Beach Property"). The indebtedness underlying the guaranty was secured by a mortgage on the Revere Beach Property. The Debtor defaulted on the guaranty, and Patriot initiated a civil action against the Debtor to collect the guaranty, eventually obtaining a judgment on May 27, 2011 from the Middlesex Superior Court. According to Patriot, prior to obtaining its judgment, it conducted a public auction foreclosure sale of the Revere Beach Property on April 30, 2010, in order to recover some or all of the Debtor's indebtedness. At that foreclosure sale, an entity known as Affinity Investments, LLC ("Affinity") appeared through Attorney Paul Seyffert and submitted the high bid of $5,200,000.00 for the Revere Beach Property. Affinity tendered the required $50,000.00 deposit and executed a Sale Agreement, which provided that Affinity would pay the $470,000.00 deposit balance within ten days, and pay the remaining purchase price balance within thirty days. Affinity, however, defaulted on its obligations under the Sale Agreement. At the time of the Foreclosure Sale, Patriot alleged that Affinity was a straw for the Debtor; that Affinity's manager and registered agent, Martin Nahigian, was the Debtor's close associate; that the Debtor solely owned and/or controlled Affinity; and that the Debtor, and not Affinity or Nahigian, funded the $50,000.00 foreclosure sale deposit payment from a deposit account held in the name of the Debtor's spouse, Elisa

4

Fustolo. On July 30, 2010 Patriot initiated a civil action in the Suffolk Superior Court against Affinity for breach of contract and obtained, on January 20, 2011, a default judgment against Affinity in the amount of $5,150,000.00 plus interest in the amount of $363,933.32.

Patriot further alleged in its Complaint that the Debtor "established and continued to utilize a multi-layered conglomeration of juridical entities and trusts that in relationship to the Debtor's past and present business activities is unnecessarily complex and, upon information belief, intentionally established and utilized to assist the Debtor in concealing his assets from creditors" and promoting fraud. Patriot identified numerous entities which it alleged held one or more deposit accounts, did not observe corporate or other formalities, and were mere instrumentalities or alter egos of the Debtor. These entities included: 32 Park Vale Avenue Trust, a nominee trust; Property Trust Corporation; Huntington Properties, Inc.; CPE Meetings, Inc.; National Tax Institute, Inc.; Revere Beach Properties, Inc.; 5 High Street, LLC; 65 North Margin Street LLC; 115 Salem Street Realty LLC; 135-137 Salem Street LLC; 162 Salem Street LLC; Fustolo Development LLC; Fustolo Properties LLC; New Sheafe Street, LLC; North Margin Street Development, LLC; the Ocean Club Condominium, LLC; Ocean GP, LLC; Huntington Properties Holding Company, LLC; NTI, LLC; "Revere Beach," a limited liability company; and Affinity.

In its Complaint, Patriot alleged the existence of numerous transfers by the Debtor to his spouse and his constructive ownership of her deposit accounts; numerous cash transactions within one year of the petition date; and substantial transfers to and from

5

insiders and the entities set forth above. Patriot also alleged that on the petition date the Debtor was entitled to receive royalties and writing fees from one or more publishers of educational materials for accountants and tax professionals for the Debtor's authorship of educational materials purchased by various publishers of educational materials for inclusion as content in their publications. These publishers included Stuart Shough Seminars LLC, WebCE, Inc., Thomson Reuters, Spidell Publishing, Inc., CPE Link, Professional Scholastics, Inc., and Professional Educational Services, LP. According to Patriot, the Debtor's right and entitlement to receive payments from educational publishers for his written work, submitted to educational publishers under express or implied agreements in existence as of the petition date, are property of the bankruptcy estate. The Debtor, however, as alleged by Patriot, instructed the publishers to make payments to National Tax Institute, Inc. and other entities, including 32 Park Vale Avenue Trust. Patriot alleged that these transfers of royalties constituted actual and/or constructive concealment of the Debtor's property. In addition, Patriot complained of "[u]nauthorized and [n]efarious [p]ostpetition [t]ransfers; lack of records concerning assets, debts and business affairs, as well as false statements and oaths during his bankruptcy case."

Based upon the foregoing allegations, Patriot crafted the following counts: Count I – Objection to Discharge (11 U.S.C. § 727(a)(2)(A)); Count II - Objection to Discharge (11 U.S.C. § 727(a)(2)(B)); Count III - Objection to Discharge (11 U.S.C. § 727(a)(3)); Count IV - Objection to Discharge (11 U.S.C. § 727(a)(4)); Count V - Objection to Discharge (11

6

U.S.C. § 727(a)(5)); and Count VIII – Nondischargeability of Patriot Claim (11 U.S.C. § 523(a)(2)).

C. <u>The Parties' Discovery Dispute</u>

As noted above, Patriot seeks an order compelling the Debtor to produce emails, as well as bank records, and account information for a period after December 2014. With respect to the emails, Fustolo maintains that he cannot produce them as his emails are deleted every thirty days by AOL pursuant to its policies. Indeed, in an Affidavit, Fustolo stated the he has used AOL as his internet service provider for years; that he does not and never has used folders as part of his management of his emails; and that he does not move emails to "Saved Mail." He stated that it is his practice "to simply read incoming e-mails that do not constitute junk and to print any that I will need in addressing my accounting client's matters," adding "[o]nce I open and read an e-mail, *it is moved by AOL to 'Old Mail' unless I chose the first action item labeled as 'Keep as New'*." (emphasis supplied). Fustolo also stated: "After a period of time, which I have not previously measured but now believe to be approximately 30 days, e-mails in 'Old Mail' are deleted by AOL."

Patriot responded to the Debtor's assertions as follows:

> In its opening brief, Patriot explained that AOL emails remain available unless actively deleted by the accountholder (i.e., Mr. Fustolo). Fustolo responded by claiming that AOL automatically deletes emails, and submitted to the Court a 2001 AOL policy he pulled from a Columbia University law professor's online class materials. Ordered by the Court to revisit his position on AOL's deletion policies, Fustolo (unbelievably) continues his misrepresentations and attempts to obfuscate this very simple issue - - now claiming that his emails are automatically deleted by AOL if they are not "purposefully saved." This too is false, and the Court need look no further than Exhibit B to Fustolo's Supplemental Opposition: he now has submitted the very same AOL policy (not the Columbia professor's

7

> materials) that Plaintiffs originally submitted, which explicitly states that emails "remain in your Inbox folder until you delete them" - - whether they are purposefully saved or not.

Patriot provided the Court with a link to AOL's current statement on email deletion and retention: https://help.aol.com/articles/aol-mail-features-and-actions. The materials establish "emails will be permanently deleted and cannot be retrieved if your account is inactive" and that to keep an account active, the user must sign in to AOL Mail with their username and password at least once every 90 days. Moreover, the policy set forth by AOL provides:

| Folder | Limits and Timelines |
|---|---|
| Inbox | Emails will remain in your Inbox folder until you delete them (even the emails that you've read). |
| Sent | Sent emails will remain in your Sent folder until you delete them. |
| Spam | Emails in your Spam folder will be automatically deleted after 5 days. |
| Recently Deleted or Trash | Emails you delete may be deleted immediately or may remain in your Recently Deleted or Trash folder for up to 7 days. |
| My Folders | Emails saved to any of the subfolders in your My Folders mail folder will never be deleted until you delete them. |

In view of the foregoing, the Court finds that the Debtor's position is devoid of merit. If he is unable to produce emails, it can only mean that he deleted them, as according to the information provided by Patriot as to AOL's policies, 5,000 emails are viewable at any time.

The Debtor also argued:

The scope of Patriot's request is overly broad and unduly burdensome, and could, with respect to the Second Request for Production of Documents, be the poster child for support of the changes in the Rules of Civil Procedure relating to conduct of discovery. Many of the documents and electronically stored information consist of emails that are confidential and/or protected by either Fifth Amendment or attorney-client privilege. For instance, there are e-mails that pertain to Fustolo's whistleblower claims that if disclosed to Patriot would disclose information that is protected by Fifth Amendment because of the criminal action initiated at the behest of Patriot, or attorney-client privilege. Furthermore, as previously stated, Patriot already has in its possession the financial records of the Debtor and his wife as well as the Debtor's affiliated entities, the written material submitted by Fustolo to the continuing education providers, and copies of payment information from those providers. Patriot's Motion should also be denied as it is seeking documents, electronically stored information and things that are not reasonably calculated to lead to the discovery of admissible evidence. Patriot argues that Fustolo has failed to produce emails that are retained indefinitely by AOL. Patriot is mistaken.[2]

In view of the magnitude of the Fustolo's obligation to Patriot and other creditors, the serious allegations made by Patriot in its 62-page Complaint, and the potential discharge of the substantial debt disclosed by the Debtor in his Chapter 7 case, the Court concludes that the Debtor's argument that the emails and other documents are irrelevant and overly burdensome to produce rings hollow.  Moreover, the Debtor's argument that the changes to the Federal Rules of Civil Procedure which have introduced proportionality as an element for the Court's consideration in ruling on the scope of

---

[2] The Court takes judicial notice that the Debtor was indicted under the Massachusetts criminal harassment statute for allegedly planning and executing a scheme to harass Patriot and its principal by creating an official-looking website that claimed to be devoted to ferreting out corporate abuse. Fustolo allegedly wrote and published various harassing "news articles" of purported wrongdoing by the victim and his company in an attempt to coerce the victim to forego or settle the bankruptcy proceeding.

discovery, *see* Fed. R. Civ. P. 26(b)(1),[3] does not compel a different result. Indeed, it supports Patriot's position. The Debtor has interests in numerous entities and, as alleged by Patriot, his financial affairs are not free from entanglement. Patriot is entitled to the information it seeks, except as set forth below, and it is the Debtor's obligation to produce it, despite his protestations to the contrary. This Court agrees with Patriot that "[f]undamental principles of discovery (Fed. R. Civ. P. 26), fairness, and common sense dictate that Patriot is entitled to Fustolo's responsive non-privileged emails (at AOL, Hushmail and in any other account) (footnote omitted)."

Patriot has requested emails and documents from Fustolo, the production of which he has asserted violates his Fifth Amendment rights. While Patriot argues that "providing a limited catalog of the emails to test whether the application of the Fifth Amendment to them is warranted[,]" the Court is concerned that such a proposal could jeopardize Fustolo's rights against self-incrimination. Moreover, it is the Court which must determine whether the privilege has been properly invoked. <u>Boston Children's Heart Found., Inc. v. Nadal-Ginard</u>, No. C.A. 93-12539-REK, 1994 WL 129648, at *4 (D.

---

[3] Fed. R. Civ. P. 26(b)(1) provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

10

Mass. March 31, 1994)(citing Hoffman v. United States, 341 U.S. 479, 486, 71 S. Ct. 814 (1951)). In Nadal-Ginard, Magistrate Judge Karol discussed various procedures that could be employed to assure that, in demonstrating his or her right to claim the privilege, the claimant is not required to disclose the very information that he or she believes might be incriminating. The court stated:

> Courts faced with this dilemma have devised various solutions. Some have required the person claiming the privilege to provide general descriptions of the withheld documents by categories, in the hope that those general descriptions alone would suffice to enable the court to make a reasoned decision. *See, e.g.*, Butcher v. Bailey, 753 F.2d 465, 470 (6th Cir. 1985). Other courts have required that the documents be submitted for in camera inspection. *See, e.g.*, In re Sealed Case, 950 F.2d at 738–39; United States v. Kretz Equip. Co., No. 82–681, 1985 WL 1489, at *1 (N.D. Ind. 1985). Another possible approach would be to require the person claiming the privilege to submit for in camera inspection a complete, item by item, index of the documents, perhaps accompanied by an explanation of why the production of any particular document whose description appeared benign was nevertheless potentially incriminating. *Cf.* McIntyre I, 115 F.R.D. at 532 (ordering the privilege claimant, among other things, to submit a written explanation of why the act of production of each requested document might be incriminating). Along the same lines, the claimant could, through the use of either live testimony at an *ex parte* hearing or an *ex parte* affidavit, provide general or even specific information sufficient to establish a foundation for the claim of privilege. Clearly, no single approach is ideal for all the varied cases and circumstances in which the issue is apt to arise; but equally clearly, a person who asserts that the compelled production of documents in his possession would violate his Fifth Amendment right against self-incrimination must somehow provide sufficient information to the court to enable it to determine whether all the requirements for invoking the privilege are satisfied. *See* Butcher, 753 F.2d at 470; McIntyre I, 115 F.R.D. at 531.

Id. at *5. This Court determines that the option, outlined by the Nadal-Ginard court above, i.e., the Court's *in camera* inspection of all emails and documents Fustolo asserts to be privileged under the Fifth Amendment, while not the most efficient approach,

affords Fustolo the greatest protection of his Fifth Amendment rights. Accordingly, the Court shall require Fustolo to provide it, for its *in camera* inspection only, copies of all emails and documents he asserts are privileged under the Fifth Amendment, together with an explanation of why invocation of the privilege is warranted. These submissions by Fustolo shall not constitute a waiver of his Constitutional right against self-incrimination. The Court will thereafter determine whether the privilege has been properly invoked and issue further appropriate orders, including, if appropriate, further orders regarding Fustolo's production of emails and/or other documents to Patriot.

Patriot also has alleged that Fustolo is fraudulently transferring non-royalty property of the estate, post-petition, in violation of 11 U.S.C. § 727(a)(2)(B). It identified the property of the estate as income generated by certain businesses owned by the bankruptcy estate, namely CPE Meetings, Inc. and National Tax Institute, Inc., and rents from real estate owned by entities that constitutes property of the estate. Patriot obtained the Debtor's account records by way of subpoenas directed to banking and other institutions (without any objection of the Fustolos) that show that in 2013 and 2014 the Debtor transferred property of the estate to his spouse and made significant withdrawals of cash. Patriot is entitled to updated or current account statements from September 2014 through December 2015 as they may contain relevant information to that claim. Having established numerous limited liability companies and corporations, Patriot is not required to blindly accept the Debtor's assertion that the personal services exception to property of the estate, *see* 11 U.S.C. § 541(a)(6), prevents it from ascertaining whether the

12

Debtor's interests in those entities and at least a portion of their revenue is property of the estate.  See Fitzsimmons v. Walsh (In re Fitzsimmons), 725 F.2d 1208 (9th Cir. 1984).

### III. CONCLUSION

In accordance with the foregoing, the Court shall enter an order granting, in part, Patriot's Motion to Compel, denying, in part, the Debtor's Cross-Motion to Quash Second Request for Production of Documents and ordering Fustolo to submit for the Court's *in camera* review copies and indexes of emails and documents, the production of which he asserts are protected by his rights under the Fifth Amendment.

By the Court,

*[signature]*

Joan N. Feeney
United States Bankruptcy Judge

Dated: December 31, 2015