# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~

In re
**STEVEN C. FUSTOLO**,                                Chapter 7
    Debtor                                Case No. 13-12692-JNF

~~~~~~~~~~~~~~~~~~~~~~~~

**THE PATRIOT GROUP, LLC**,
    Plaintiff
v.                                Adv. P. No. 14-1193
**STEVEN C. FUSTOLO**,
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I.    INTRODUCTION

The matter before the Court is the Motion of the plaintiff, The Patriot Group, LLC ("Patriot") to Conform the Pleadings to the Evidence (the "Motion to Conform"). Patriot seeks, pursuant to Fed. R. Civ. P. 15(b)(2), made applicable hereto by Fed. R. Bankr. P. 7015, to conform its Complaint filed against the debtor, Steven C. Fustolo ("Fustolo," the "Debtor," or the "Defendant"), to the evidence to assert a claim and obtain judgment against Fustolo for denial of his discharge pursuant to 11 U.S.C. § 727(a)(6) based on his refusal to comply with this Court's Order dated December 31, 2015. Fustolo opposes the Motion to Conform which was filed nearly three months following the conclusion of the trial. Many of the facts and issues pertinent to the Motion to Conform are set forth in this

1

Court's Memorandum issued in this proceeding on December 31, 2015 (the "Memorandum"), *see* 50 Patton Drive, LLC v. Fustolo (In re Fustolo), Adv. Pro. No. 14-1193, 2015 WL 9595421 (Bankr. D. Mass. Dec. 31, 2015), and this Court's Order of even date (the "December 31st Order" or the "Order"), which are incorporated herein by reference.   Determination of the Motion to Conform requires a review of additional relevant facts, as supplemented by the events which occurred after the entry of the December 31st Order.[1]

## II.   BACKGROUND AND PROCEURAL HISTORY

In March 2007, Fustolo, through business entities he owned and controlled, sought to develop property located in Revere, Massachusetts (the "Revere Beach property").  On March 29, 2007 one of these entities, Revere Beach Holdings, LLC, borrowed $12.7 million from Patriot which loan was secured by a mortgage on the Revere Beach property and was personally guaranteed by Fustolo.  In 2008, Revere Beach Holdings defaulted on the obligation and foreclosure proceedings ensued.  Patriot obtained a judgment against Fustolo on May 27, 2011 from the Massachusetts Superior Court for Middlesex County in the approximate amount of $20.5 million.  On May 6, 2013, Patriot, 50 Thomas Patton

---

[1] The procedural history and facts recounted herein are derived from the Memorandum, the December 31st Order, other orders, memoranda, pleadings, documents and exhibits filed in the bankruptcy case and this proceeding, including the parties' Joint Pretrial Memorandum filed on May 19, 2016, the testimony and exhibits introduced at the trial, as well as the entire record of the bankruptcy case and all proceedings in it.   *See* LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir.1999) ("The bankruptcy court appropriately took judicial notice of its own docket[.]").

Drive, LLC ("Patton Drive") and Richard Mayer, as petitioning creditors, filed an involuntary petition against Fustolo seeking the entry of an order for relief under Chapter 7. Fustolo contested the involuntary petition. On December 16, 2013, the Court entered the order for relief. *See* In re Fustolo, 503 B.R. 206 (Bankr. D. Mass. 2013), *aff'd*, Fustolo v. 50 Thomas Patton Drive, LLC, 816 F.3d 1 (1st Cir. 2016). Harold B. Murphy was thereafter appointed the Chapter 7 Trustee (the "Trustee").

On January 17, 2014, Fustolo filed sworn Schedules, a Statement of Financial Affairs and other required documents. On August 14, 2014, he filed an amended Schedule B –Personal Property, in which he listed a "Possible whistleblower recovery" of an unknown value. Throughout the course of this litigation, the so-called "Whistleblower Claims" have been a reference to claims which Fustolo asserts he made to the Internal Revenue Service and the Securities and Exchange Commission based upon a "reasonable belief that there had been a possible violation by Patriot of federal tax law and provisions of the Securities and Exchange Commission statute." *See* Fustolo's Post-trial Memorandum at p. 16.

Patriot, together with Patton Drive, timely filed a 62-page, eight count Complaint against Fustolo on September 30, 2014, seeking exceptions to the discharge of Fustolo's debt to them and the denial of his discharge pursuant to 11 U.S.C. §§ 523 and 727. Initially, Patriot and Patton Drive were represented by the law firm of Jager Smith P.C. ("Jager Smith"), which filed the Complaint on their behalf. On May 28, 2015, Jager Smith filed a Motion to Withdraw as Counsel to Patriot, which the Court allowed on June 2, 2015, and Patriot retained new counsel. On October 28, 2015, Patton Drive filed a Motion

to Dismiss its Claims against Fustolo, consisting of Counts VI and VII, which the Court allowed on November 5, 2015, without prejudice to the rights of Patriot.

Patriot alleged in its Complaint that Fustolo "established and continued to utilize a multi-layered conglomeration of juridical entities and trusts that in relationship to the Debtor's past and present business activities is unnecessarily complex and, upon information belief, intentionally established and utilized to assist the Debtor in concealing his assets from creditors" and promoting fraud. Through the Complaint, Patriot further alleged the existence of numerous transfers by Fustolo to his spouse and his constructive ownership of her deposit accounts; numerous cash transactions within one year of the petition date; and substantial transfers to and from insiders and the entities controlled by him. Patriot also alleged that, as of the petition date, Fustolo was entitled to receive royalties and writing fees from one or more publishers of educational materials for accountants and tax professionals for his authorship of educational materials. The Debtor, however, as alleged by Patriot, instructed the publishers to make payments to entities which were his instrumentalities and alter egos. Patriot alleged that these transfers of royalties constituted actual and/or constructive concealment of Fustolo's property. In addition, it complained of "[u]nauthorized and [n]efarious [p]ostpetition [t]ransfers . . . [;] [l]ack of [r]ecords [c]oncerning [a]ssets, [d]ebts and [b]usiness [a]ffairs" as well as false statements and oaths during his bankruptcy case. 50 Patton Drive, LLC v. Fustolo (In re Fustolo), 2015 WL 9595421 at *2-3 (Bankr. D. Mass. Dec. 31, 2015).

Based upon the foregoing allegations, Patriot set forth the following counts: Count I – Objection to Discharge (11 U.S.C. § 727(a)(2)(A)); Count II - Objection to Discharge (11 U.S.C. § 727(a)(2)(B)); Count III - Objection to Discharge (11 U.S.C. § 727(a)(3)); Count IV - Objection to Discharge (11 U.S.C. § 727(a)(4)); Count V - Objection to Discharge (11 U.S.C. § 727(a)(5)); and Count VIII – Nondischargeability of Patriot Claim (11 U.S.C. § 523(a)(2)).[2]

On November 13, 2014, the Court issued a Pretrial Order (the "Pretrial Order") which, among other things, provided deadlines for the completion of discovery and requirements for filing a joint pretrial memorandum.  The Pretrial Order, in part, provided: "The parties are ordered to file . . . a Joint Pretrial Memorandum approved by all counsel . . , which shall set forth the following:  . . .  (I) The issues of fact which remain to be litigated (evidence at trial shall be limited to these issues). . . . " Despite the case management procedures set forth in the Pretrial Order, the discovery process in this proceeding was lengthy, complex and the subject of numerous contentious disputes between the parties marked by obvious hostility.  The Court conducted hearings and extended the deadlines set forth in the Pretrial Order on several occasions during the lengthy pretrial phase.

On June 15, 2015, Patriot filed a Motion for Partial Summary Judgment (the "Motion for Summary Judgment"), through which it argued that it was entitled to judgment on Count IV of the Complaint (§ 727(a)(4)) based on Fustolo's knowing and

---

[2] As discussed above, Counts VI and VII of the Complaint related to Patton Drive's claims which were dismissed.

fraudulent false oath in connection with listing the Whistleblower Claims on his Amended Schedule B. Patriot alleged that the Whistleblower Claims did not exist, were never filed with the IRS or SEC, and were concocted by Fustolo to gain leverage over Patriot in his bankruptcy case. Further, it maintained, Fustolo engaged in a campaign of cyber harassment against Patriot as a way to give credence to the Whistleblower Claims. On September 11, 2015, the Court denied the Motion for Summary Judgment, finding that Patriot failed to establish the absence of genuine issues of material fact. *See* 50 Patton Drive, LLC v. Fustolo (In re Fustolo), 537 B.R. 55, 63 (Bankr. D. Mass. 2015).

As discussed in further detail below, on March 17, 2016, the Court imposed an expeditious trial date as a sanction against Fustolo pursuant to Fed. R. Civ. P. 37 for his failure to comply with the Court's December 31st Order concerning production of documents and materials Fustolo claimed were privileged under the Fifth Amendment to the United States Constitution. Two months later, the Court conducted a six-day trial on the Complaint on May 23, 24 and 26 and June 14, 15, and 23, 2016. The parties filed their post-trial memoranda on August 26, 2016. Patriot asserted in its memorandum that it would be filing a separate motion, pursuant to Fed. R. Civ. P. 15 and Fed. R. Bankr. P. 7015, to amend its Complaint to conform to the evidence to add a claim for denial of discharge under § 727(a)(6), based on Fustolo's willful refusal to comply with the December 31st Order. On September 12, 2016, Patriot filed the Motion to Conform pursuant to Rule 15(b)(2), which allows an unpleaded claim to be considered when it is tried by express or implied consent. Fustolo filed an Objection.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a) and (b)
and the order of reference from the United States District Court for the District of
Massachusetts in District Court Local Rule 201. This is a core proceeding pursuant to 28
U.S.C. § 157(b)(2)(J). No party has requested an evidentiary hearing on the Motion to
Conform, and the matter is ripe for determination. The Court now makes the following
findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

III.   **FACTS**

A. <u>The Motion to Compel</u>

One of the numerous discovery disputes between the parties in this proceeding
involved Fustolo's failure to produce certain emails and bank statements to Patriot in
response to its requests for production of documents. On November 16, 2015, Patriot
filed a Motion to Compel Fustolo to Produce Documents pursuant to Fed. R. Civ. P. 37,
Fed. R. Bankr. P. 7037, and Massachusetts Local Bankruptcy Rule 7037-1 (the "Motion to
Compel"), seeking, *inter alia*, to compel Fustolo to produce "(a) emails responsive to
Patriot's First Request for Production of Documents (the "First Set") and (b) up to date
bank account statements and other financial records through 2015 for each of the entities
Fustolo controls." Specifically, Patriot requested an order compelling Fustolo to produce
certain emails immediately or otherwise grant it access to them directly from Fustolo's
email account provider, American Online ("AOL"). Patriot also sought documents
updating Fustolo's bank records and other account information, which had been
previously produced, "for the remainder of 2014 and through the present date" because
Fustolo had refused to produce any updated financial information. In Patriot's view, the

requested updated bank records would have exposed Fustolo's alleged postpetition wasting of bankruptcy estate assets which it maintained was relevant to certain counts in its Complaint under 11 U.S.C. § 727(a)(2)(B), (a)(3), and (a)(5).

Fustolo filed an Opposition to Patriot's Motion to Compel and a Cross-Motion to Quash the Second Request for Production of Documents (the "Opposition and Cross-Motion"), asserting that the scope of Patriot's discovery request was overbroad and unduly burdensome, that "the emails are not reasonably accessible as they have been deleted by AOL," and that many of the requested emails were protected by the Fifth Amendment to the United States Constitution.  He also recounted in the Opposition and Cross-Motion that Patriot initiated an investigation of Fustolo in 2015 which resulted in a criminal action filed by the Massachusetts Attorney General against him related to the Whistleblower Claims.  With respect to his position that certain emails were protected by the Fifth Amendment, he explained: "For instance, there are e-mails that pertain to Fustolo's whistleblower claims that if disclosed to Patriot would disclose information that is protected by Fifth Amendment because of the criminal action initiated at the behest of Patriot . . . . "  Concerning Patriot's request for Fustolo's AOL emails, Fustolo claimed that such emails were not retained by AOL:

> AOL's policy for retaining emails is that they are retained on AOL's system for approximately two days after the email has been read. After that time the email is automatically deleted. Unread and sent emails are preserved by AOL on its system for approximately twenty-eight days. Then deleted by AOL.

In support, he attached a purported AOL Policy to his Opposition and Cross-Motion, which appeared to have been printed from a Columbia University website.  Patriot filed

8

a Reply to the Opposition and Cross-Motion through which it asserted its reasons in support of production.  It also maintained that Fustolo had misrepresented AOL's email retention and deletion policy.

The Court heard Patriot's Motion to Compel and the Opposition and Cross-Motion on December 2, 2015.  At the hearing, Patriot requested that Fustolo produce all non-privileged documents and emails responsive to its requests and provide it with a log of all documents and emails, including all AOL emails and emails from a "hushmail.com" account, which he asserted were protected by his right against self-incrimination under the Fifth Amendment.  Fustolo's criminal defense counsel, who appeared at the hearing, challenged Fustolo's ability to provide such a privilege log without waiving his Fifth Amendment rights.  She asserted that the very act of producing certain documents and emails was a testimonial act under the Fifth Amendment.  In light of these issues and the parties' dispute over the email provider's email retention policies, the Court directed Fustolo's counsel to conduct further research on AOL's email retention policies and file a supplemental response by December 3, 2015 at 3:00 PM.[3]  The Court also authorized Patriot's counsel to file a response to Fustolo's supplemental response within 24 hours. Patriot filed a Response on December 4, 2015 addressing the AOL email retention policies and renewing its request that Fustolo provide it with a limited catalog of documents and emails he was withholding on Fifth Amendment grounds.

---

[3] In his Supplemental Opposition, Fustolo limited his arguments to AOL's email policies and did not further address the Fifth Amendment waiver issues.

With respect to the emails, Fustolo maintained that he could not produce them as his emails were deleted every thirty days by AOL, which he maintained was AOL's policy.  Indeed, in an Affidavit, Fustolo attested that he had used AOL as his internet service provider for years; that he did not and never had used folders as part of his management of his emails; and that he did not move emails to "Saved Mail."  He stated that it was his practice "to simply read incoming e-mails that do not constitute junk and to print any that I will need in addressing my accounting client's matters," adding "[o]nce I open and read an e-mail, *it is moved by AOL to 'Old Mail' unless I chose the first action item labeled as 'Keep as New'*." (emphasis supplied).  Fustolo also stated:  "After a period of time, which I have not previously measured but now believe to be approximately 30 days, e-mails in 'Old Mail' are deleted by AOL."

Patriot responded to Fustolo's assertions in its Reply dated December 4, 2015, as follows:

> In its opening brief, Patriot explained that AOL emails remain available unless actively deleted by the accountholder (i.e., Mr. Fustolo). Fustolo responded by claiming that **AOL automatically deletes emails**, and submitted to the Court a **2001** AOL policy he pulled from a Columbia University law professor's online class materials. Ordered by the Court to revisit his position on AOL's deletion policies, Fustolo (unbelievably) continues his misrepresentations and attempts to obfuscate this very simple issue - - now claiming that his emails are <u>automatically deleted</u> by AOL if they are not "purposefully saved." This too is false, and the Court need look no further than Exhibit B to Fustolo's  Supplemental Opposition: he now has submitted the **very same AOL policy** (not the Columbia professor's materials) that Plaintiffs [sic] originally submitted, which explicitly states that emails "**remain in your Inbox folder until you delete them**" - - whether they are purposefully saved or not.

(emphasis in original).

Following the December 2, 2015 hearing, Patriot provided the Court with a link to AOL's then policy on email deletion and retention: https://help.aol.com/articles/aol-mail-features-and-actions.

The policy set forth by AOL provided:

| Folder | Limits and Timelines |
| --- | --- |
| Inbox | Emails will remain in your Inbox folder until you delete them (even the emails that you've read). |
| Sent | Sent emails will remain in your Sent folder until you delete them. |
| Spam | Emails in your Spam folder will be automatically deleted after 5 days. |
| Recently Deleted or Trash | Emails you delete may be deleted immediately or may remain in your Recently Deleted or Trash folder for up to 7 days. |
| My Folders | Emails saved to any of the subfolders in your My Folders mail folder will never be deleted until you delete them. |

B.   The Memorandum and the December 31st Order

On December 31, 2015, the Court issued the Memorandum and the December 31st Order allowing, in part, Patriot's Motion to Compel, and denying, in part, the Debtor's Cross-Motion to Quash Second Request for Production of Documents.  In the Memorandum, the Court concluded that Fustolo's position regarding his inability to produce the requested AOL emails was "devoid of merit," finding that "[i]f he is unable to produce emails, it can only mean that he deleted them, as according to the information provided by Patriot as to AOL's policies, 5,000 emails are viewable at any time."   In re Fustolo, 2015 WL 9595421 at *4 (Bankr. D. Mass. Dec. 31, 2015).   The Court also ruled:

> In view of the magnitude of the Fustolo's obligation to Patriot and other
> creditors, the serious allegations made by Patriot in its 62-page Complaint,
> and the potential discharge of the substantial debt disclosed by the Debtor
> in his Chapter 7 case, the Court concludes that the Debtor's argument that
> the emails and other documents are irrelevant and overly burdensome to
> produce rings hollow. . . .  Patriot is entitled to the information it seeks,
> except as set forth below, and it is the Debtor's obligation to produce it,
> despite his protestations to the contrary.

Id. The Court further ruled that "'[f]undamental principles of discovery (Fed. R. Civ. P.

26), fairness, and common sense dictate that Patriot is entitled to Fustolo's responsive

non-privileged emails (at AOL, Hushmail and in any other account) . . . .'" Id.

Cognizant of the gravity of Fustolo's risk of self-incrimination balanced against

Patriot's legitimate discovery requests and Fustolo's incredible, false and obstructionist

assertions about the status of his AOL emails, the Court determined that *in camera*

submission was justified to evaluate Fustolo's assertion of the privilege.  Accordingly, the

Court established a protocol to evaluate the availability of the Fifth Amendment privilege

asserted by Fustolo.  The Court stated in the Memorandum:

> Patriot has requested emails and documents from Fustolo, the production
> of which he has asserted violates his Fifth Amendment rights. While Patriot
> argues that "providing a limited catalog of the emails to test whether the
> application of the Fifth Amendment to them is warranted[,]" the Court is
> concerned that such a proposal could jeopardize Fustolo's rights against
> self-incrimination.  Moreover, it is the Court which must determine
> whether the privilege has been properly invoked. Boston Children's Heart
> Found., Inc. v. Nadal–Ginard, No. C.A. 93–12539–REK, 1994 WL 129648, at
> *4 (D. Mass. March 31, 1994)(citing Hoffman v. United States, 341 U.S. 479,
> 486, 71 S.Ct. 814 (1951)). In Nadal–Ginard, Magistrate Judge Karol
> discussed various procedures that could be employed to assure that, in
> demonstrating his or her right to claim the privilege, the claimant is not
> required to disclose the very information that he or she believes might be
> incriminating. The court stated:

Courts faced with this dilemma have devised various solutions. Some have required the person claiming the privilege to provide general descriptions of the withheld documents by categories, in the hope that those general descriptions alone would suffice to enable the court to make a reasoned decision. *See, e.g.,* Butcher v. Bailey, 753 F.2d 465, 470 (6th Cir. 1985). Other courts have required that the documents be submitted for in camera inspection. *See, e.g.,* In re Sealed Case, 950 F.2d at 738–39; United States v. Kretz Equip. Co., No. 82–681, 1985 WL 1489, at *1 (N.D. Ind. 1985). Another possible approach would be to require the person claiming the privilege to submit for in camera inspection a complete, item by item, index of the documents, perhaps accompanied by an explanation of why the production of any particular document whose description appeared benign was nevertheless potentially incriminating. *Cf.* McIntyre I, 115 F.R.D. at 532 (ordering the privilege claimant, among other things, to submit a written explanation of why the act of production of each requested document might be incriminating). Along the same lines, the claimant could, through the use of either live testimony at an *ex parte* hearing or an *ex parte* affidavit, provide general or even specific information sufficient to establish a foundation for the claim of privilege. Clearly, no single approach is ideal for all the varied cases and circumstances in which the issue is apt to arise; but equally clearly, a person who asserts that the compelled production of documents in his possession would violate his Fifth Amendment right against self-incrimination must somehow provide sufficient information to the court to enable it to determine whether all the requirements for invoking the privilege are satisfied. *See* Butcher, 753 F.2d at 470; McIntyre I, 115 F.R.D. at 531.

Fustolo, 2015 WL 9595421, at *5 (quoting Boston Children's Heart Found., Inc. v. Nadal–Ginard, No. C.A. 93–12539–REK, 1994 WL 129648, at *5 (D. Mass. March 31, 1994)).

The Court determined that the option outlined by the Nadal-Ginard court above, i.e., the Court's *in camera* inspection of the emails and documents with an index which Fustolo asserted to be privileged under the Fifth Amendment, "while not the most efficient approach, afford[ed] Fustolo the greatest protection of his Fifth Amendment rights." Fustolo, 2015 WL 9595421 at *5. The Court ruled:

Accordingly, the Court shall require Fustolo to provide it, *for its in camera inspection only*, copies of all emails and documents he asserts are privileged under the Fifth Amendment, together with an explanation of why invocation of the privilege is warranted. *These submissions by Fustolo shall not constitute a waiver of his Constitutional right against self-incrimination.* The Court will thereafter determine whether the privilege has been properly invoked and issue further appropriate orders, including, if appropriate, further orders regarding Fustolo's production of emails and/or other documents to Patriot.

Id. (emphasis added).

The December 31st Memorandum and Order contained a clear and unambiguous directive and protocol for the production of non-privileged emails and documents to Patriot and *in camera* submission to the Court, for its review only, of emails and documents which Fustolo maintained were self-incriminating. With respect to the production of emails and documents to Patriot which were not claimed to be privileged under the Fifth Amendment, the December 31st Order provided:

The Court orders Fustolo to produce the following to Patriot within 14 days of the date of this Order:

(a) all emails (including his accounts at AOL, Hushmail and every other of his email accounts) responsive to Patriot's requests (First and Second Set) which are not privileged from disclosure by virtue of the right against self-incrimination set forth in the Fifth Amendment to the United States Constitution and/or the attorney-client privilege; (b) a log of all emails withheld by Fustolo on the basis of the attorney-client privilege, in compliance with Fed. R. Civ. P. 26; and (c) the requested banking and financial account statements from September 1, 2014 through the present which are asserted by Fustolo to be non-privileged.

December 31st Order at pp. 1-2.

With respect to the *in camera* submission of emails and documents to the Court, the December 31st Order provided:

The Court intends to protect Fustolo's constitutional right against self-incrimination pursuant to the Fifth Amendment with respect to emails and documents he asserts are self-incriminating. Patriot's request that Fustolo provide it with a "limited catalog of information about emails purportedly protected by the Fifth Amendment" may jeopardize Fustolo's right against self-incrimination. Moreover, it is the Court which must determine whether the privilege has been properly invoked. Accordingly, Fustolo shall provide the Court for its *in camera* inspection only, within 21 days of the date of this Order, copies of all emails and documents he asserts are protected under the Fifth Amendment along with two separate item by item indexes for emails and documents in the form of charts in the following formats:

**For Emails:**

| Date of Email | Sender/Author of Email | General Subject Matter | Explanation of why production is incriminating |
|---|---|---|---|
| 1. | | | |

For every numeric email item in the email index, Fustolo shall provide the Court with a copy of the subject email in a binder containing tabs with the corresponding email index number.

**For Documents:**

| Date of Document | General Subject Matter | Explanation of why production is incriminating |
|---|---|---|
| 1. | | |

For every numeric document item in the document index, Fustolo shall provide the Court with a copy of the subject document in a binder containing tabs with the corresponding document index number. Fustolo shall file the foregoing as impounded documents with a Motion to Impound pursuant to 11 U.S.C. § 107, Fed. R. Bankr. P. 9018 and MLBR 9018-1. The Court will determine whether the privilege has been properly invoked and thereafter issue appropriate orders. These submissions by Fustolo shall not constitute a waiver of his Constitutional right against self-incrimination.

December 31st Order at pp. 2-3 (footnote to <u>Nadal-Ginard</u> omitted).

As is clear from the December 31st Order, Fustolo was required to produce certain non-privileged emails and documents to Patriot by January 14, 2016 and to submit to the Court, for its review only, all emails and documents he asserted were protected by the Fifth Amendment by January 21, 2016.  The Court further ordered Fustolo to appear for a deposition by Patriot within 14 days after the production "to answer all questions unless he invokes his Fifth Amendment right." December 31st Order at p. 3.  Fustolo did not seek reconsideration of the December 31st Order (other than the deadlines for compliance), nor did he seek leave to appeal it.

C.  <u>Fustolo's Requests for Extension to Comply with the December 31st Order</u>

On January 8, 2016, Fustolo filed a Motion to Extend Time to Comply with the December 31st Order (the "Motion to Extend"), through which he sought an extension of the deadline to produce documents and emails to Patriot until February 10, 2016 and the deadline to submit documents and emails to the Court for *in camera* review until February 24, 2016, citing the complexity of the task of determining which documents were privileged and the effort required to create and review two privilege logs.  In the Motion to Extend, Fustolo assured the Court that compliance with its December 31st Order would be forthcoming: "Fustolo has already personally commenced the process necessary to fully comply with this court's order."  Patriot opposed the Motion to Extend. On January 15, 2016, the Court allowed the Motion to Extend, in part, and denied it, in part, extending the compliance date for both the production to Patriot and the submission to the Court to January 22, 2016.  On January 22, 2016, Fustolo failed to produce or submit

documents in compliance with the Court's orders and instead filed on that date a Motion

to Reconsider the January 15, 2016 order with respect to the Motion to Extend, seeking a

further extension of the deadlines set forth in the December 31st Order to February 1,

2016.  On January 26, 2016, the Court allowed that motion, subject to Patriot's rights under

Rule 37, and extended the deadline for compliance again to February 1, 2016 at 4:30 PM.

D.  The *In Camera* Submission

Four days after the extended deadline expired, Fustolo, on February 5, 2016, filed

under seal with this Court his "*In Camera* Submission Regarding His Assertion of the Fifth

Amendment" (the "Statement"), which was signed by his bankruptcy counsel, Attorney

David M. Nickless.  Fustolo also submitted to the Court a binder containing only bank

records for a number of entities with a limited index.   In the Statement, Fustolo provided

a general explanation as to why production of the bank records to Patriot would be

privileged under the Fifth Amendment. No other materials were submitted, and the

index accompanying the bank records was not in compliance with the December 31st

Order.

In the Statement, which the Court shall summarize without disclosure of

nonpublic details, Fustolo recounted that he is a defendant in a pending criminal matter

initiated in the Woburn District Court by the Massachusetts Attorney General in which

she alleges that he is guilty of witness intimidation and criminal harassment in a matter

involving internet postings allegedly made by Fustolo about John C. Howe ("Howe"),

the founder of Patriot, and his affiliates.[4]  In the Statement, Fustolo asserted that the Fifth

Amendment may be invoked in response to a demand for production of documents,

where the act of producing such materials could give rise to testimonial communications

and asserted his Fifth Amendment right not to comply with the December 31st Order

regarding materials other than the submitted bank records.  Simply put, Fustolo did not

comply with the submission requirements of the December 31st Order as he untimely

produced only bank records with a deficient index.

### E.   Patriot's Motion for Sanctions and Fustolo's Motion for Stay

Fustolo also did not comply with the December 31st Order with respect to the

production of nonprivileged AOL emails and documents to Patriot.  On February 16,

2016, Patriot filed a Motion for Sanctions against Fustolo pursuant to Fed. R. Bankr. P.

7037 and Fed. R. Civ. P. 37 (the "Motion for Sanctions"), alleging that he failed to comply

with the December 31st Order when instead of producing emails responsive to Patriot's

requests, he "unloaded a document dump of approximately 12,000 pages of non-

responsive, irrelevant materials, including . . . [h]undreds of emails without any content;

---

[4] In a complaint filed by Patriot against Fustolo and others in this Court on January 13, 2015, *see* The Patriot Group, LLC v. Steven C. Fustolo, and John Does 1-10 (In re Fustolo), Adv. Pro. No. 15-1015-JNF, Patriot alleged that in 2014 the "defendants began a systematic, malicious, and deliberate course of unlawful conduct designed to attack plaintiff's reputation and business as a means of intimidating plaintiff and related persons and influence the claims asserted in, and the outcome of, these bankruptcy proceedings[,]" through cyber-bullying and other misconduct perpetrated against Patriot and Howe.  *See* Complaint at ¶1.  On March 24, 2015, this Court dismissed, or in the alternative, abstained from the adversary proceeding.  The current criminal matter pending against Fustolo by the Massachusetts Attorney General arises out of the same operative facts that were the basis of Adv. Pro. No. 15-1015.

[s]ignificant amounts of classic junk mail specifically inviting Fustolo to 'unsubscribe' which have no relevance to this case; and [v]olumes of similar non-responsive documents." Patriot also accused Fustolo of deliberately spoliating email.  In support of the Motion for Sanctions, Patriot submitted the Affidavit of its counsel, Jack I. Siegal, to which it attached examples of some of the emails produced by Fustolo.  Patriot characterized the production as "non-responsive rubbish" and further pointed out that Fustolo produced no emails from 2013 and most of 2014.  As sanctions for violating the December 31st Order, Patriot requested that the Court set an expeditious trial date, prohibit Fustolo from introducing missing emails as evidence at trial, and award Patriot reasonable attorneys' fees to be determined at a future date.  The Court set the matter for hearing.  On March 4, 2016, Fustolo filed a Motion for an Order Continuing His Deposition, through which he sought to continue his deposition until after the date of the hearing on Motion for Sanctions.  The Court allowed the motion on March 8, 2016.

On March 7, 2016, Fustolo also filed a Motion for a Stay or Protective Order Concerning His Deposition (the "Motion for Stay"), requesting a stay of his deposition in this proceeding until the resolution of the pending criminal action against him. Alternatively, he requested the issuance of a protective order precluding Patriot from questioning him about any issues related to the criminal case.  Patriot filed an Opposition to the Motion for Stay.  The Debtor filed an Opposition to the Motion for Sanctions to which he attached his Affidavit, dated March 15, 2016.  Fustolo offered the following explanation for his failure to produce certain emails to Patriot in paragraph 10 of his Affidavit:

On July 27, 2014 I lost my laptop with its external back-up drive. At that time, all e-mails were saved directly on the laptop using the AOL software program. They were not saved on the "AOL Cloud." As a result, all e-mails on my laptop and the external back-up drive were, I believe, irretrievably lost.

F. The March 17, 2016 Hearing

On March 17, 2016, the Court heard the Motion for Sanctions, the Motion for Stay and oppositions. It also addressed Fustolo's failure to comply with the December 31st Order.

Summarizing the intent of the Order, the Court said:

To protect Mr. Fustolo's Fifth Amendment privilege, I would determine whether his privilege was properly invoked, and he was to submit logs of the emails and logs of financial records with certain information. He did not produce any emails in the in-camera submissions and he did not submit any logs with respect to the emails. He submitted a log and certain financial records. The log did not have the information that I had directed he supply in the order and memorandum.

Tr. at pp. 17-18.

Attorney Nickless represented at the hearing that the *in camera* submission was handled by Fustolo's criminal counsel and that he did not review or even read the documents submitted in the binder to the Court, although he signed and filed the Statement. Id. at pp. 16, 21-22. He also said he thought Fustolo had complied with the December 31st Order. Id. at 17. Attorney Matthew Horvitz also appeared at the hearing on behalf of Fustolo.[5] He engaged in the following colloquy with the Court:

THE COURT: Can you tell me why [Fustolo] did not comply with the order for in-camera submission?

_____

[5] Attorney Horvitz filed a Notice of Appearance on behalf of Fustolo in this adversary proceeding on March 4, 2016. He filed a Motion to Withdraw as Co-Counsel to Fustolo three weeks later on March 25, 2016, which the Court allowed.

ATTORNEY HORVITZ: Your Honor, my client is asserting his Fifth Amendment right over the act of production of those documents.

THE COURT: I appreciate that. That's why I went through a painstaking effort to protect it with an in-camera submission. Can you tell me why he did not comply with the order for in-camera submission, for my eyes only?

MR. HORVITZ: The only reason I'm aware of is the overriding concern that Your Honor is the finder of fact in this case and that by producing documents to Your Honor, whether they're reviewed in camera or not, would implicate his Fifth Amendment rights.

\*\*\*

MR. HORVITZ: The concern also is that the Court is also the finder of fact in this case and that there is a concern that by submitting those documents to the Court, that could also implicate my client's . . . Fifth Amendment right or the potential for an adverse inference. . . .

<u>Id</u>. at pp. 30-31.

At the conclusion of the hearing, the Court denied the Motion for Stay, ruling that a stay of Fustolo's deposition was not warranted pending the outcome of the criminal proceeding which was based on allegations of criminal harassment. The Court also denied Fustolo's request for a protective order, given his ability to assert the Fifth Amendment at his deposition in this proceeding. The Court stated:

This Court has gone to great lengths to protect Mr. Fustolo's right to invoke the Fifth Amendment, but he has chosen not to obey this Court's order in *refusing to comply* with it and in *refusing to comply* with the protocols that I had established. He claims he's in an untenable situation but his choice is of his own making, as he has *refused to comply* with this Court's order. The Court is mindful that he may well be in contempt of court, but that is not before me today. That issue may be raised by Patriot or by the Court at a later date. [6]

---

[6] Patriot never filed a motion for contempt against Fustolo.

Id. at p. 41 (emphasis added).  With respect to the Motion for Sanctions, the Court allowed

the motion, ruling as follows:

> At Mr. Fustolo's request, the Court extended twice the time for him to comply with the order. The Court simply finds that he has failed to comply with the order in a number of respects. First, he has failed to produce emails to Patriot which are not claimed to be protected by an applicable privilege, which are the subject of Patriot's first and second request[s]. The production omits emails from -- for some of 2013 and 2014.

> The conclusion is inescapable that they have not been produced intentionally or have been deleted. Many of these emails are relevant to one or more counts of the multi-count complaint. Mr. Fustolo did produce approximately 12,000 pages of emails, many of which I find were not responsive to Patriot's request[s]. The inference is warranted from the record of this discovery dispute that he deleted them, especially in light of his inconsistent and contrary representations about the emails. He at first stated that they were deleted by AOL when, in fact, he had them, . . .

> In addition to and separate and apart from the non-privileged emails that were to be produced, Mr. Fustolo has violated other aspects of the Court's December 31st order relating to and granting him the opportunity to produce documents for an in-camera inspection. He has not provided the two logs of emails. . . .

> The Court's order permitting in-camera inspection was designed to give Mr. Fustolo an opportunity to persuade the Court that he had properly invoked the privilege based upon the analysis in the Court's memorandum. He has refused to comply with these terms of the order, in my view, without legitimate reason and he continues to object to production for an in-camera, judges-eyes-only review. The reason is unclear, except that he states that I can't be impartial. The framework and the protocol were based on well-settled case law and I designed it to protect his rights against self-incrimination.

> Instead of compliance with the protocol he unilaterally determined that he wasn't complying for the reasons stated in his in-camera submission. Mr. Fustolo wants to be the judge in this case and he can't be. He stated that he wasn't producing a log of the documents and that's not his call. Without compliance with the order the Court cannot . . . do its job. I find that Mr. Fustolo's failure to comply with the order and his changes of position are in furtherance of a scheme to delay this litigation and legitimate discovery. For these reasons, sanctions are warranted and the Court is granting Patriot's motion for sanctions.

> The Court observes that the sanctions requested by Patriot are more than reasonable and, indeed, are far less drastic than sanctions that may well be warranted under the circumstances of this case. Patriot does not seek a default judgment. It simply seeks a speedy trial date and an order prohibiting the debtor from presenting any emails that he did not produce at the trial and those remedies are certainly within the scope of Rule 37 and the Court's discretion.
>
> ***
>
> I'm going to grant Patriot's right to a trial and schedule the trial . . . . The trial in this matter will be held on May 23rd at 1:00 o'clock. . . .

Id. at pp. 42-45.  Fustolo did not appeal either the Order dated March 17, 2016 allowing the Motion for Sanctions or the Order denying the Motion for Stay, nor did he seek leave to appeal those orders.

### G. Further Pretrial Litigation and the Spoliation Motion

Less than a week after the March 17th hearing, on March 23, 2016, Fustolo filed a Motion to Continue the Trial, citing his need to be present at a professional tax conference, which he had organized to be held in the Grand Cayman Islands.  Patriot opposed the request for continuance, and the Court denied the Motion to Continue on March 24, 2016. Less than two weeks later, on April 6, 2016, Fustolo filed a Motion to Reconsider the March 24th Order, which Patriot also opposed.  The Court denied the motion on April 8, 2016, ruling, in part:

> [T]he Court denies the Motion for Reconsideration.  The Court scheduled a speedy trial as a sanction, and no scheduling conflict was raised at the hearing held on March 17, 2016. . . . [T]he Defendant's subsequent claim of unavailability is not cause to change the trial dates. . . . The Motion for Reconsideration simply appears to be designed to thwart the sanction and delay the trial in this adversary proceeding.

Less than two weeks after the denial of the second requested trial continuance, on April 19, 2016, Attorney Evan Fray-Witzer filed a Notice of Appearance on behalf of Fustolo in this adversary proceeding and a Motion for Recusal of the undersigned from this proceeding pursuant to 28 U.S.C. § 455(a) and (b).  The Court denied the request on May 12, 2016.  Attorney Fray-Witzer has not filed any additional pleadings in this proceeding.

On May 10, 2016, Patriot filed "Plaintiff's Rule 37 Motion Concerning Defendant Steven C. Fustolo's Spoliation of Purported 'Books and Records' and Late Production of Records" (the "Spoliation Motion") through which it sought pretrial rulings that (a) Fustolo intentionally spoliated books and records for his affiliated business entities, and (b) he may not rely upon, testify about, or use at trial any of the 2,000 pages of printed materials he produced to Patriot *after* his April 12, 2016 deposition.   The Spoliation Motion related to printed materials produced by Fustolo from electronic financial spreadsheets, and Patriot alleged that Fustolo spoliated electronic versions of these documents.   The Spoliation Motion did not involve the email dispute which was primarily the subject of the December 31st Order but was, in Patriot's words "reminiscent of his email spoliation." Fustolo opposed the Spoliation Motion.  The Court conducted a hearing on May 17, 2016 on the Spoliation Motion and other motions filed by Fustolo related to discovery and admissibility of evidence.  Following the hearing, on May 18, 2016, the Court allowed the Spoliation Motion, in part, and denied it, in part, ruling Fustolo was prohibited from introducing at trial any document, whether in electronic or paper form, which was not produced to Patriot prior to Fustolo's deposition and

prohibited him from introducing into evidence at trial any documents or financial records which were electronically prepared and were produced in printed or paper form to Patriot where he did not also produce those documents in their electronic format (the "May 18th Order").  The Court made no findings with respect to whether Fustolo intentionally spoliated his electronic books and records.[7]  As discussed in further detail below, the May 18th Order affected the admissibility of certain evidence introduced at the trial.

### H.  The Joint Pretrial Memorandum and the Request for Judicial Notice

On May 19, 2016, the parties filed their Joint Pretrial Memorandum, as required by the Pretrial Order, which was signed by Attorneys Nickless and Siegal.  In Section H of the Joint Pretrial Memorandum, entitled "Patriot's Fact Issues for Trial," Patriot listed, as Item 14, "Fustolo's discovery misconduct in this proceeding, including but not limited to Fustolo's spoliation of evidence."  On his list of potential witnesses to be called at trial, Fustolo listed the Trustee and Attorneys Michael Fencer and Jonathan Horne of Jager Smith which firm had filed the Complaint in this proceeding on behalf of Patriot and Patton Drive and whose motion to withdraw as counsel was allowed.  On May 20, 2016, Patriot filed a Request for Judicial Notice pursuant to Fed. R. Evid. 201, through which it requested that the Court take judicial notice of six items in this proceeding consisting of 1) the December 31st Order; 2) the Memorandum; 3) the Memorandum in Support of

---

[7] Fustolo sought reconsideration of the May 18 Order which the Court denied on May 23, 2016.

Fustolo's Motion for Stay; 4) the transcript of the March 17, 2016 hearing;[8] 5) the Court's Order dated May 12, 2016 denying Fustolo's Motion for Recusal of the undersigned; and 6) the May 18th Order.  Fustolo did not oppose the Request for Judicial Notice.  The Court heard the Request on May 23, 2016, prior to the first day of trial, and allowed it "subject to [Fustolo] making objections during the trial – on . . . grounds other than judicial notice."

### I.   The Motion to Exclude Expert Witness

On May 20, 2016, Patriot filed a Motion in Limine to Exclude Fustolo from Calling an Affirmative Expert Witness at Trial (the "Motion to Exclude Expert Witness"), through which it sought to exclude Fustolo from calling Kimberly Train as his expert financial witness at trial. Fustolo opposed the motion.  The Court conducted hearings on the Motion to Exclude Expert Witness and Fustolo's Opposition on May 23 and 26, 2016 and issued an Order dated May 31, 2016, ruling, in part, that the Court would exclude Ms. Train's opinion and testimony to the extent she reviewed or relied upon documents excluded by the May 18th Order.

### J.   The Trial

The trial commenced on May 23, 2016.  At the outset of the trial, the Court observed that "This adversary complaint is not about the allegations arising out of a criminal complaint [against Fustolo] or the allegations Mr. Fustolo engaged in some type of internet harassment of Mr. Howe." Tr. Day One at p. 14.  During Patriot's opening

---

[8] In the Request for Judicial Notice, Patriot incorrectly referenced the date of the hearing as March 17, 2015 as a result of a typographical error appearing on the cover page of the transcript of the hearing held on March 17, 2016.

statement, it asserted that "the evidence will also show that Mr. Fustolo has repeatedly abused the bankruptcy process, violated this Court's orders, failed to preserve evidence and based on the totality of all of the evidence we will ask Your Honor to deny Mr. Fustolo a discharge with prejudice." Id. at 20.  Following this statement, the Court inquired: "Do you have a count under 11 U.S.C. § 727(a)(6)?"  Patriot's counsel responded: "No. We don't have an (a)(6) claim, Your Honor." Id.

On day four of the trial, June 14, 2016, Patriot's attorney questioned Fustolo about his compliance with the December 31st Order:

> Q. In December of 2015 the Court entered an order in which you were to provide the Court in camera documents that you contend you were withholding based on the Fifth Amendment privilege. Do you recall that?
> A. I do, yes.
> Q. You never produced those documents to the Court, did you?
> A. My attorney supplied them to the Court, yes.
> Q. I don't believe that you followed -- there was a protocol that you were supposed to follow in terms of providing documents withheld on Fifth Amendment grounds, as well as a log of documents. Sir, do you know whether you complied with that order?
> A. Sir, I relied on my counsel who believed that – that compliance had been adhered to.
> Q. Mr. Fustolo, you've withheld documents [i]n this case based on the Fifth Amendment privilege, correct?
> A. Yes.
> Q. And Patriot has no idea what documents you withheld based on that privilege, correct?
> A. I have no idea what Patriot knows, sir.
> Q. Well, you didn't give them to us, did you?
> A. I didn't supply them to you, no.
> Q. And you didn't give us a log, correct?
> A. Sir, I don't know what my attorneys provided. I --
> Q. And the Court doesn't know what documents you withheld on Fifth Amendment grounds, does it?
> A. I believe documents were supplied to the Court, sir.

Q. Are you telling the Court right now under oath that you supplied all
documents withheld on the Fifth Amendment privilege to the Court?
A. Sir, I relied on my counsel for that, so whatever they said we complied
with, we complied with.

Tr. Day Four at pp. 110-112.  Fustolo did not object to Patriot's questions concerning the

December 31st Order. Fustolo repeatedly invoked the Fifth Amendment when

questioned by Patriot's counsel about a number of other matters on day four of the trial.

On day five of the trial, June 15, 2016, Fustolo called Attorney Fencer, Patriot's

prior counsel, as a witness to testify about documents Jager Smith received during the

course of the litigation in this matter.[9]   Attorney Fencer testified about the discovery

process.   He testified that although Jager Smith received documents from Fustolo,

Fustolo's production of documents was "woefully lacking . . .  given the nature of his

assets, liabilities and business affairs." Tr. Day 5 at p. 61.  On June 22, 2016, Fustolo filed

a Motion to Vacate the May 18th Order based on the testimony of Attorney Fencer, which

Fustolo maintained supported his long held contention that he had produced certain

financial documents to Jager Smith even though Patriot denied having received them.

The Court held a hearing on the Motion to Vacate on the following day, June 23, 2016,

and denied it, finding that Attorney Fencer's testimony did not support the Motion to

Vacate.  Notwithstanding the denial of the Motion to Vacate, the Court clarified the May

18 Order based upon Attorney Fencer's testimony regarding his receipt of certain hard

---

[9] On June 2, 2016, Patriot had filed a Motion to Quash Trial Subpoenas to Attorney
Fencer and the Trustee which the Court allowed, in part, and denied, in part, on June 7,
2016, ruling that Attorney Fencer was required to appear as a witness at the trial,
subject to certain limitations and conditions regarding the attorney-client privilege and
the restrictions imposed by the May 18th Order.

copy documents from third party sources: "I intend to allow into evidence any documents produced to Patriot before Mr. Fustolo's deposition, which were produced and obtained by Mr. Fencer from third parties in paper format only."  Tr. Day Six at p. 88.

K.  The Motion to Conform

The parties rested and the trial concluded on June 23, 2016 without closing arguments, as both counsel indicated their intention to file post-trial briefs.  The parties filed their post-trial memoranda on August 26, 2016.  In its post-trial memorandum, Patriot indicated that it would seek, by separate motion, pursuant to Fed. R. Civ. P. 15(b)(2) and Fed. R. Bankr. P. 7015, to conform the pleadings to the evidence to allow it to assert a claim and obtain a judgment against Fustolo for denial of his discharge under § 727(a)(6).  In that memorandum, Patriot also argued in favor of amending its Complaint pursuant to Rule 15(b)(2) to add a claim for denial of discharge under § 727(a)(6).  On September 12, 2016, Patriot filed the Motion to Conform, seeking to conform the Complaint to the evidence presented to include a claim for denial of discharge pursuant to 11 U.S.C. § 727(a)(6), for refusal to comply with the December 31st Order.  As noted above, Fustolo filed an Objection.

IV.    **POSITIONS OF THE PARTIES**

A.  Patriot

In support of the Motion to Conform, Patriot asserts that the Court found on March 17, 2016 that Fustolo willfully and intentionally refused to comply with the December 31st Order, that Patriot raised Fustolo's noncompliance as a triable issue in the Joint

Pretrial Memorandum when it referred therein to "discovery misconduct," and that it questioned him, without objection, about his noncompliance with the December 31st Order at trial. Patriot adds that it filed before trial, and the Court allowed, in the absence of an objection by Fustolo, the Request for Judicial Notice of the Memorandum, the December 31st Order and the transcript of the March 17, 2016 hearing. As a result, Patriot maintains, "Fustolo consented (expressly or impliedly) to trial of his refusal to comply with the Order" and that based on the evidence presented at trial and otherwise in the record "Fustolo's adjudicated intentional refusal to comply with the Court's Order warrants judgment in Patriot's favor under Section 727(a)(6)."

B. <u>Fustolo</u>

Fustolo denies that a § 727(a)(6) count was tried by implied consent. Relying on <u>Haught v. Maceluch</u>, 681 F.2d 291 (5th Cir. 1982), Fustolo contends that "if the matters presented at trial to support an unpled cause of action also support other matters at trial, then no implied consent can be found." On that premise, Fustolo asserts that the Motion to Conform is inappropriate for a number of reasons.

First, Fustolo maintains, Patriot's statement at the outset of the trial that it did not have a count under § 727(a)(6) amounts to a waiver of a trial on that issue and "eliminates any possibility that the Debtor would have been put on notice that any evidence that it was seeking to introduce or any issues of fact that it considered to be in dispute would be used to try a Section 727(a)(6) count." Second, he argues, the issue of fact raised by Patriot in the Joint Pretrial Memorandum ("Fustolo's discovery misconduct in this proceeding, including but not limited to Fustolo's spoliation of evidence") could have

been and actually was used by Patriot to prevent Fustolo from introducing documents that Patriot argued it never received.  Although not entirely clear, this argument is an apparent reference to the Spoliation Motion which resulted in the May 18th Order, which the Court entered one day before the parties' filing of the Joint Pretrial Memorandum. Third, with respect to Patriot's Request for Judicial Notice, Fustolo contends that the request was filed "almost immediately" after Fustolo notified Patriot that it would call prior counsel and the Trustee as witnesses as indicated in the Joint Pretrial Memorandum. As a result, he reasons, "the implication was not necessarily that one of the multiple docket entries would be used to prosecute a 727(a)(6) count[.]"  Rather, he contends, the Request for Judicial Notice "could just as easily be interpreted as an attempt to blunt Fustolo's intended introduction of evidence, through the testimony of its former counsel and the Chapter 7 Trustee, that Patriot had been provided the documents that were the subject of its multiple discovery motions. . . "  Finally, Fustolo observes, ambiguously, that Patriot "remained anxious despite this court's cautionary comments at the commencement of trial, to submit evidence at trial to support its assertion that the Whistleblower Claims to the Internal Revenue Service and the Securities and Exchange Commission [against Patriot] did not exist and that they were instead fabricated to foment some internet campaign."  Fustolo, accordingly, concludes that there was simply no intent to try a § 727(a)(6) denial of discharge claim because all pleadings and testimony upon which the argument is founded can be said to be relevant to other issues in the case. He adds that any assertion of a § 727(a)(6) claim is untimely and prejudicial to Fustolo, although he did not contest the finality of the Court's rulings made on March 17, 2016.

## V.   DISCUSSION

### A.   Applicable Law-Rule 15(b)(2)

Fed. R. Civ. P. 15(b)(2), made applicable to this adversary proceeding by Fed. R.

Bankr. P. 7015, allows an unpleaded claim to be considered when the parties' conduct

demonstrates their express or implied consent to litigate the claim.  Antilles Cement Corp.

v. Fortuno, 670 F.3d 310, 319 (1st Cir. 2012). The Rule provides, in part, as follows:

**(a)  Amendments During and After Trial.**

***

**(2)  For Issues Tried by Consent.** When an issue not raised by the pleadings
is tried by the parties' express or implied consent, it *must* be treated in
all respects as if raised in the pleadings. A party may move--at any time,
even after judgment--to amend the pleadings to conform them to the
evidence and to raise an unpleaded issue. But failure to amend does not
affect the result of the trial of that issue.

Fed. R. Civ. P. 15(b)(2) (emphasis added).

"The goal of Rule 15(b) is to promote the objective of deciding cases on the merits

rather than on the relative pleading skills of counsel." Am. Family Mut. Ins. Co. v.

Hollander, 705 F.3d 339, 348 (8th Cir. 2013) (citing Foman v. Davis, 371 U.S. 178, 181–82,

83 S. Ct. 227 (1962)). "Thus, amendments under the rule are to be 'liberally granted where

necessary to bring about the furtherance of justice and where the adverse party will not

be prejudiced.'" Id. (quoting Am. Fed'n of State, Cty. & Mun. Emps. v. City of Benton,

513 F.3d 874, 883 (8th Cir.2008) (internal quotation marks and citation omitted)).  *See also*

Noonan v. Rauh (In re Rauh), 119 F.3d 46, 52 (1st Cir. 1997) ("Under Rule 7015(b), motions

to amend a complaint to conform to the evidence admitted at trial are liberally allowed.").

"A party can give implied consent to the litigation of an unpleaded claim in two ways: by treating a claim introduced outside the complaint 'as having been pleaded, either through [the party's] effective engagement of the claim or through his silent acquiescence'; or by acquiescing during trial 'in the introduction of evidence which is relevant only to that issue.'" Antilles Cement Corp. v. Fortuno, 670 F.3d at 319 (alteration in original) (quoting Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1172 (1st Cir. 1995)). As a general rule, implied consent can be found when a party fails to object to evidence relating to issues that are beyond the pleadings, but this finding depends on the circumstances of each case, Haught v. Maceluch, 681 F.2d 291, 305 (5th Cir. 1982), and "[t]he introduction of evidence relevant to an issue already in the case may not be used to show consent to trial of a new issue absent a clear indication that the party who introduced the evidence was attempting to raise a new issue." Id. (quoting Int'l Harvester Credit Corp. v. East Coast Truck, 547 F.2d 888, 890 (5th Cir. 1977)). A motion to amend pursuant to Rule 15(b)(2) may be denied if an opposing party demonstrates "unfair prejudice." In re Rauh, 119 F.3d at 52.

The United States Court of Appeals for the First Circuit recently addressed the parameters of Rule 15(b)(2) in the context of a § 727 action in Premier Capital, LLC v. Crawford (In re Crawford), 841 F.3d 1 (1st Cir. 2016). In Crawford, the Chapter 7 debtor, Crawford, had a 401(k) account and a Cash Balance Plan ("CBP") account with his employer, Wells Fargo. The quarterly statements sent to Crawford from Wells Fargo contained the heading "401(k) Plan and Cash Balance Plan." The accounts were listed separately on the statements sent to the debtor, but the statements also contained a

cumulative amount reported under the label "Total Retirement Accounts."   On his Schedule B, Crawford disclosed his 401(k) account with a value equal to the total value of both of his retirement accounts. He did not disclose the CBP.  Premier Capital LLC, a creditor, filed a complaint and made a general allegation of a false oath in Crawford's Schedules and Statement of Financial Affairs.   The CBP, although not mentioned in the complaint as the basis for a false oath claim, became an issue at trial, specifically on the second day of a three day trial, when Premier introduced into evidence the quarterly statements from Wells Fargo.  "On multiple occasions [at trial], Premier pointedly asked Crawford why he failed to include his CBP on his Schedule B.  Crawford responded without objection."  Id. at 6.

Both parties addressed the issue of the CBP in closing arguments and in their post-trial briefs in which Premier asserted that Crawford made a false oath in violation of 11 U.S.C. § 727(a)(4)(A) by failing to disclose his interest in the CBP.  The bankruptcy court ruled that while the claim of a false oath by omission of the CBP was not raised in Premier's complaint, the debtor impliedly consented to the trial of the charge, found that his failure to include the CBP on Schedule B amounted to a false oath, and denied his discharge.  The Court of Appeals held that "[b]ecause Crawford failed to object to the trial of an unpleaded claim and engaged the merits of the claim, this Court cannot say that the bankruptcy court abused its discretion by finding Crawford impliedly consented."  Id.

B. <u>Analysis</u>

As noted above, through five of the six remaining counts in the Complaint, Patriot objects to the Debtor's discharge under various subsections of 11 U.S.C. § 727; one count seeks an exception to discharge for the debt owed to Patriot by Fustolo under 11 U.S.C. § 523(a)(2). The majority of the evidence introduced at the trial related to the § 727 counts, although Patriot introduced evidence on the § 523 claim as well.

Pursuant to § 727(a)(6)(A), the Court shall not grant a discharge if "the debtor has refused, in the case . . . to obey any lawful order of the court, other than to respond to a material question or to testify" 11 U.S.C. § 727(a)(6)(A). Fustolo was put on notice at the very outset of the trial of the possibility of a § 727(a)(6)(A) claim because during Patriot's opening statement, its counsel stated: "the evidence will also show that that Mr. Fustolo had repeatedly abused the bankruptcy process, violated this Court's Orders . . . ." and the Court inquired about the existence of a count under § 727(a)(6). Indeed, Fustolo received notice of a § 727(a)(6)(A) claim prior to the trial when the parties jointly filed the Joint Pretrial Memorandum in which Patriot listed "Fustolo's discovery misconduct in this proceeding" as a fact issue for trial and when the Court allowed Patriot's Request for Judicial Notice with a concomitant introduction of evidence relative to Fustolo's noncompliance with the December 31st Order. He received further clear indication that such a claim was being asserted against him when Patriot questioned him, without objection, on day four of the trial specifically about his compliance with the December 31st Order. *See* Tr. Day Four at pp. 110-112. The evidence introduced was sufficient to have alerted Fustolo to a matter outside the Complaint. Despite Fustolo's arguments to

35

the contrary, the Court finds that he impliedly consented to the litigation of the unpleaded § 727(a)(6)(A) claim before the trial when he jointly submitted the Joint Pretrial Memorandum with Patriot and when he did not object to the Request for Judicial Notice. He also acquiesced during the trial when he answered, without objection, questions from Patriot concerning his compliance with the December 31st Order.

The Court rejects Fustolo's interpretation of Patriot's counsel's response to the Court's question during his opening statement and concludes that Patriot did not waive a trial on the § 727(a)(6)(A) claim. The Court inquired of Patriot at the outset of the trial whether there was a count under § 727(a)(6), and Patriot responded that it did not have such a claim. This reply was accurate as no such count was pleaded in the Complaint, which was filed before such a claim arose. Furthermore, the statement was made by Patriot before any witnesses testified. Despite Fustolo's attempt to characterize Patriot's accurate response as a waiver, the Court is hard pressed to conclude that a waiver of the ability to amend a complaint to conform to the evidence could be effected at the beginning of a trial and prior to the close of evidence. Although Fustolo maintains that Patriot's response to the Court's inquiry eliminates any possibility that he would have been put on notice that any evidence would have been used to try a § 727(a)(6) claim, his position ignores the later introduction of evidence as the trial progressed. Fustolo should have considered the possibility that a § 727(a)(6)(A) claim would be tried immediately after the March 17, 2016 hearing and especially when he was directly questioned by Patriot about his noncompliance with the December 31st Order on day four of the trial. Moreover, he did not object to the line of questioning on the basis of waiver or any other grounds.

36

While the Court acknowledges that it would have been better practice for Patriot to have sought amendment of the Complaint to include a separate count for § 727(a)(6)(A) sooner, its failure to do so in the present context does not constitute a waiver. "[C]ourts unanimously define waiver as the intentional relinquishment of a known right." DiVittorio v. HSBC Bank, USA, N.A. (In re DiVittorio), 430 B.R. 26, 52 (Bankr. D. Mass. 2010), aff'd, 670 F.3d 273 (1st Cir. 2012). Under the circumstances, this Court cannot find that Patriot intended to relinquish a claim under a § 727(a)(6).

Fustolo's attempts to conflate the evidence regarding the § 727(a)(6)(A) claim with issues that could have related to the numerous discovery and evidentiary disputes presented in this case does not dilute or obscure Patriot's intention to raise the issue of Fustolo's noncompliance with the December 31st Order in this denial of discharge proceeding. Fustolo contends that the issue of fact raised in the Joint Pretrial Memorandum ("Fustolo's discovery misconduct in this proceeding, including but not limited to Fustolo's spoliation of evidence.") could have been and was used by Patriot to prevent him from introducing documents at trial. This argument is unpersuasive given that the parties engaged in numerous, indeed constant, disputes in this proceeding before and during the trial about discovery lapses and the resulting implications with respect to the admissibility of evidence. The Court's findings at the hearing held on March 17, 2016 regarding the Motion for Sanctions, and the scheduling of an expedited trial date, which Fustolo opposed, constituted a clear and unambiguous finding of discovery misconduct by Fustolo. His attempts to obfuscate that adjudication with his other discovery misconduct, resulting in the May 18th Order, for the purpose of claiming that the

contested issue listed in the Joint Pretrial Memorandum supported other matters at trial is opportunistic and unavailing.   The listing of "discovery misconduct" in the Joint Pretrial Memorandum, which was executed by both parties,  was a clear warning to Fustolo that all of his discovery misconduct, including that which resulted in the March 17, 2016 rulings with respect to the December 31st Order, would be triable issues.  Fustolo cannot avoid the import of the evidence relating to the December 31st Order simply because other discovery matters continued to be litigated throughout the trial.

Fustolo similarly contends that the Request for Judicial Notice, which was filed one day after the filing of the Joint Pretrial Memorandum and reflected that Fustolo would call Attorney Fencer and the Trustee as witnesses at trial, could have been interpreted as an attempt to prevent Fustolo from introducing evidence through those witnesses that Patriot had previously received documents during discovery.  As stated by the court in Haught, on which Fustolo relies: "It is true that 'the introduction of evidence relevant to an issue already in the case may not be used to show consent to trial of a new issue absent a clear indication that the party who introduced the evidence was attempting to raise a new issue.'" Haught v. Maceluch, 681 F.2d 291, 305 (5th Cir. 1982) (quoting Int'l Harvester Credit Corp. v. East Coast Truck, 547 F.2d 888, 890 (5th Cir. 1977)).

In this case, three of the six items introduced into evidence through the Request for Judicial Notice, namely the December 31st Order, the Memorandum, and the transcript of the March 17, 2016 hearing, directly related to Fustolo's noncompliance with the December 31st Order. Fustolo argues that the Request for Judicial Notice was an

attempt by Patriot to prevent Fustolo from introducing evidence that he had provided documents to prior counsel and the Trustee.  The Court does not agree.  The premise that evidence introduced by Patriot to establish Fustolo's violation of the December 31st Order could have been proffered relative to other discovery disputes is unpersuasive and is an attempt by Fustolo to gain advantage from the multiple discovery disputes and issues he created in this proceeding.  This is particularly so where, as here, the pertinent evidence consisting of the December 31st Order, the Memorandum and the transcript of the March 17, 2016 hearing is more strongly relevant to a § 727(a)(6)(A) claim than the theory espoused by Fustolo.  *See* Haught, 681 F.2d at 305 (citing Wallin v. Fuller, 476 F.2d 1204, 1210 (5th Cir. 1973)).  Simply put, a claim under § 727(a)(6)(A), which did not exist when the Complaint was filed, was clearly indicated and should have been apparent to Fustolo upon the filing of the Joint Pretrial Memorandum and Patriot's filing of the Request for Judicial Notice one day later.  Indeed, such a claim was foreseeable as early as March 17, 2016.

Fustolo's contention that Patriot "remained anxious" to introduce evidence at trial to support his contention that the Whistleblower Claims did not exist is vague and underdeveloped but appears to be a further effort to advance his premise that evidence introduced to support the § 727(a)(6) claim was somehow related to other issues in the case.  For the above stated reasons, the Court rejects that argument.

The Court finds that Fustolo impliedly agreed to try the denial of discharge claim under § 727(a)(6)(A) through the filing of the Joint Pretrial Memorandum and through his silent acquiescence and failure to object to the introduction of evidence directly

39

relevant to that claim.  First, the claim was raised in the pleadings filed before trial in the Joint Pretrial Memorandum.  The inclusion of the "discovery misconduct" issue in the Joint Pretrial Memorandum should have alerted Fustolo that his most egregious discovery misdeed in this proceeding, namely his failure to comply with the December 31st Order, would be a triable issue.  Second, the introduction of the December 31st Order, the Memorandum and the transcript of the March 17, 2016 hearing through Patriot's Request for Judicial Notice constituted competent evidence that Fustolo failed to comply with the December 31st Order for purposes of § 727(a)(6)(A) and was admitted without objection by Fustolo. Third, Patriot's questioning of Fustolo on day four of the trial about the December 31st Order, again without objection, constitutes acquiescence at trial in the introduction of evidence which was more strongly relevant to the issue of Fustolo's noncompliance with the December 31st Order than issues concerning discovery and admissibility of evidence which permeated this proceeding and the trial. *See* Haught, 681 F.2d at 305; s*ee generally* Premier Capital, LLC v. Crawford (In re Crawford), 841 F.3d 1 (1st Cir. 2016).

While Fustolo complains that Patriot filed the Motion to Conform two and one-half months after the conclusion of the trial, he ignores that Patriot raised the issue in its post-trial memorandum, and the plain language of Rule 15(b)(2) which permits amendment of the pleadings "at any time, even after judgment."  Critical to the Court's analysis is whether allowance of the Motion to Conform would result in unfair prejudice to Fustolo.  "The term 'unfair prejudice' refers to whether a party 'had a fair opportunity to defend and whether he could offer any additional evidence if the case were to be

retried on a different theory.'" <u>Noonan v. Rauh (In re Rauh)</u>, 119 F.3d 46, 52 (1st Cir. 1997)

(quoting <u>Browning Debenture Holders' Comm. v. DASA Corp.</u>, 560 F.2d 1078, 1086 (2d

Cir. 1977) and 3 James Wm. Moore et al., Moore's Federal Practice ¶ 15.13[2], at 993 (2d

ed. 1966)).   In this case, Fustolo had a full and fair opportunity to address his compliance

with the December 31st Order at trial.   He, in fact, directly testified about the matter and

said that he believed he *did* comply with the Order, although he maintained that he relied

on his attorneys to do so.   It is hard to imagine what additional evidence Fustolo could

offer or what defense he could advance on this matter were it to be retried as the Court

previously adjudicated his refusal to comply with the December 31st Order in its rulings

on March 17, 2016 -- rulings which Fustolo did not seek leave to appeal.   There can simply

be no unfair prejudice to Fustolo when he had a full opportunity to testify about his

compliance with the December 31st Order, notwithstanding the fact that his testimony

directly contradicted this Court's unchallenged rulings.   Moreover, the Court discerns no

bad faith or dilatory motive on the part of Patriot in seeking amendment of the Complaint

at the time of the submission of its post-trial memorandum, and it finds no prejudice to

Fustolo from any resulting delay given Fustolo's full opportunity to address the issue at

trial.   For the above stated reasons, the Court concludes that Fustolo impliedly consented

to trial of the § 727(a)(6)(A) claim.   The Court shall enter an order allowing the Motion to

Conform pursuant to Rule 15(b)(2), and treats the claim under 11 U.S.C. § 727(a)(6)(A) as

if it was raised in the Complaint and tried.

C.  Applicable Law-§ 727(a)(6)

Section §727(a)(6) provides as follows:

(a) The court shall grant the debtor a discharge, unless--

. . . (6) the debtor has refused, in the case--

> (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;
> (B) on the ground of privilege against self-incrimination, to respond to a material question approved by the court or to testify, after the debtor has been granted immunity with respect to the matter concerning which such privilege was invoked; or
> (C) on a ground other than the properly invoked privilege against self-incrimination, to respond to a material question approved by the court or to testify; . . .

11 U.S.C. § 727(a)(6)(A)-(C).  It is well-settled that when a creditor challenges a debtor's discharge under § 727, the standard of proof is preponderance of the evidence and the burden of proving the objection rests with the party opposing discharge. Fed. R. Bankr. P. 4005.  *See* Harrington v. Donahue (In re Donahue), No. 11-026, 2011 WL 6737074, at *11 (B.A.P. 1st Cir. Dec. 20, 2011*)*.

Grounds exist for denial of a discharge under § 727(a)(6) when a debtor has refused 1) to obey any lawful order of the court, other than an order to respond to a material question or to testify (§ 727(a)(6)(A)); 2) to respond to a material question approved by the court or to testify, on the ground of privilege against self-incrimination, after the debtor has been granted immunity with respect to the matter concerning which such privilege was invoked (§ 727(a)(6)(B)); or 3)  to respond to a material question approved by the court or to testify on a ground other than the properly invoked privilege against self-incrimination (§ 727(a)(6)(C)).  In the Motion to Conform, Patriot made reference to

42

§ 727(a)(6), without regard to a specific subsection.  It asserted its claim as one for "denial of discharge for debtor's refusal to comply with a court order" which comports with the provisions of § 727(a)(6)(A).  Section 727(a)(6)(B), which allows the court to deny a debtor a discharge if he refuses to respond to a material question approved by the court or to testify after a grant of immunity, is inapplicable here as Fustolo did not seek immunity in this proceeding under 11 U.S.C. § 344.[10]  A court may deny a debtor a discharge under Section 727(a)(6)(C) if the debtor refuses to respond to a material question approved by the court or refuses to testify on a ground other than the properly invoked privilege against self-incrimination.  The Court is unable consider this ground for denial of discharge in the context of the Motion to Conform as it was not specifically raised by Patriot in that Motion.  Moreover, Fustolo precluded the Court from determining whether he had a properly invoked privilege against self-incrimination because he refused to comply with the December 31st Order.  Accordingly, the Court will confine its analysis herein to § 727(a)(6)(A).

D.  Analysis

"'The term used in § 727(a)(6)(A) is 'refused' not 'failed.'" Smith v. Jordan (In re Jordan), 521 F.3d 430, 433 (4th Cir. 2008) (quoting LaBarge v. Ireland (In re Ireland), 325 B.R. 836, 838 (Bankr. E.D. Mo. 2005)). The term "refuse" is not defined in the Bankruptcy Code. Gillman v. Green (In re Green), 335 B.R. 181, 183 (Bankr. D. Utah 2005).  A debtor

---

[10] The statute provides: "Immunity for persons required to submit to examination, to testify, or to provide information in a case under this title may be granted under part V of title 18."  11 U.S.C. § 344.

has been found to "refuse" when a court determines that lack of compliance with a court order is willful and intentional. Jordan, 521 F.3d at 433 (citing LaBarge, 325 B.R. at 838). See also Standiferd v. U.S. Trustee (In re Standiferd), 641 F.3d 1209, 1212 (10th Cir. 2011). "[A] mere failure to obey the order, resulting from inadvertence, mistake, or inability to comply, is insufficient; the party seeking [denial of discharge] must demonstrate some degree of volition or willfulness on the part of the debtor." Pereira v. Gardner (In re Gardner), 384 B.R. 654, 670 (Bankr. S.D. N.Y. 2008).  The bankruptcy judge who issues an order is normally in the best position to evaluate whether a delay in compliance warrants denial of discharge under § 727(a)(6)(A). Commerce Bank & Trust Co. v. Burgess (In re Burgess), 955 F.2d 134, 138 (1st Cir. 1992), abrogated on other grounds by Field v. Mans, 516 U.S. 59, 116 S. Ct. 437 (1995).  See also Devers v. Bank of Sheridan, Montana (In re Devers), 759 F.2d 751, 755 (9th Cir. 1985) ("[I]t is totally within the discretion of the bankruptcy court to find a particular violation of the court's order so serious as to require denial of discharge."); Yoppolo v. Walter (In re Walter), 265 B.R. 753, 758 (Bankr. N.D. Ohio 2001) ("For purposes of § 727(a)(6)(A), a bankruptcy court, in determining whether a debtor has 'refused' to obey a court order, is given a great deal of discretion.").

The Code also provides no definition for a "lawful order of the court" for purposes of § 727(a)(6)(A), but courts have interpreted the term to refer to any command, direction, or instruction issued by a court which is permitted by law. Standiferd, 641 F.3d at 1213 (citing Black's Law Dictionary 892 (7th ed. 1999)).  As explained by the court in Standiferd:

> The party objecting to discharge under [§ 727(a)(6)(A)] must demonstrate
> that "the debtor received the order in question and failed to comply with
> its terms." In re Jordan, 521 F.3d 430, 433 (4th Cir. 2008). The debtor then

bears the burden of explaining his non-compliance. Id. Ultimately, the court may not deny discharge under § 727(a)(6)(A) unless it finds that the debtor's non-compliance was willful. Id.

Standiferd, 641 F.3d at 1212.

The December 31st Order was a lawful order of the Court as it was a clear and unambiguous command that Fustolo comply with discovery obligations by submitting privileged materials *in camera* to the Court, for its inspection only, pursuant to the procedures set forth in Boston Children's Heart Found., Inc. v. Nadal–Ginard, No. C.A. 93–12539–REK, 1994 WL 129648, at *5 (D. Mass. March 31, 1994), and by producing materials which were not claimed to be incriminating to Patriot. The Order was issued to resolve Patriot's Motion to Compel, to enable Patriot to complete its discovery and allow the parties to proceed to a trial on the merits in the face of Fustolo's falsehoods and obstruction, while simultaneously safeguarding Fustolo's constitutional rights. As provided in the December 31st Order and as stated by the Court at the March 17, 2016 hearing, the December 31st Order was designed to protect Fustolo's Fifth Amendment rights. The United States Supreme Court has approved the practice of requiring parties who seek to avoid disclosure of documents to make the documents available for *in camera* inspection. *See* United States v. Zolin, 491 U.S. 554, 568-69, 109 S. Ct. 2619 (1989) (citing Kerr v. United States District Court for Northern District of Cal., 426 U.S. 394, 404–405, 96 S. Ct. 2119 (1976)). *See also* In re Grand Jury Subpoena (Mr. S.), 662 F.3d 65, 70 (1st Cir. 2011) ("[T]he very purpose of conducting an in camera review is to determine which, if any, of a group of documents are privileged."). Moreover, the Supreme Court has ruled that disclosure of allegedly privileged materials to a court for purposes of determining

45

the merits of a claim of privilege does not have the legal effect of terminating the privilege. Zolin, 491 U.S. at 568.

The December 31st Order was not one requiring a response to a material question or to testify as it governed the production of non-incriminating materials to Patriot and submission of potentially Fifth Amendment privileged materials to the Court for the purpose of assessing the validity of Fustolo's invocation of the privilege. Given Fustolo's stated concern that production of certain materials to Patriot or the creation of a privilege log for Patriot would have constituted a testimonial act, the Court fashioned the December 31st Order to permit Fustolo to avoid giving testimony and/or producing incriminating materials to Patriot. Fustolo did not seek reconsideration, a stay of, or leave to appeal the December 31st Order. Indeed, he asserted that he intended to "fully comply" with it when he sought an extension of the compliance deadlines.

Fustolo did not comply with either the requirement of making an *in camera* submission to the Court or producing materials to Patriot as mandated by the December 31st Order, and there can be no doubt that such noncompliance was willful and intentional. The Court questioned Fustolo's counsel extensively at the March 17, 2016 hearing about Fustolo's compliance with the *in camera* Court submission. Counsel responded that there were concerns about implicating Fustolo's Fifth Amendment rights and the potential for an adverse inference. This explanation does not support mistake, inadvertence, or an inability on his part to comply with the December 31st Order, and the Court found as much: "This Court has gone to great lengths to protect Mr. Fustolo's right to invoke the Fifth Amendment, but he has chosen not to obey this Court's order in

46

refusing to comply with it and in refusing to comply with the protocols that I had established. . . ." Tr. of March 17, 2016 hearing at p. 41. The Court added: "I find that Mr. Fustolo's failure to comply with the order and his changes of position are in furtherance of a scheme to delay this litigation and legitimate discovery." Id. at p. 43. The explanations offered by Fustolo at the March 17th hearing for his refusal to comply with the December 31st Order, namely that doing so would violate his Fifth Amendment rights and that in camera submission to the Court could have created the potential for an adverse inference with the Court as the finder of fact, were not justifiable excuses for his refusal to obey the Order as the materials required to be submitted to the Court, for its inspection only, could not have been used to incriminate him if the Court had determined his Fifth Amendment privilege was properly invoked.[11]  See In re Three Grand Jury Subpoenas, Dated Jan. 5, 1988, 847 F.2d 1024, 1028-29 (2d Cir. 1988) (finding that Fifth Amendment does not protect refusal to produce documents for in camera inspection). Fustolo's contrived concern about raising an adverse interest was rejected when made at the March 17th hearing and is transparently specious now when viewed in light of the number of times Fustolo invoked his Fifth Amendment rights at trial, a circumstance which could permit this Court to draw an adverse interest against him.  See Beland v. Cunningham (In re Cunningham), 365 B.R. 352, 362 (Bankr. D. Mass. 2007) ("The invocation of the Fifth Amendment in civil proceedings may be the subject of an adverse

---

[11] As stated above, the December 31st Order expressly provided that "These submissions by Fustolo shall not constitute a waiver of his Constitutional right against self-incrimination."

inference."). Fustolo's testimony at trial that he *did* comply with the December 31st Order was not credible and is, indeed, absurd.  The Court unequivocally determined on March 17, 2016 that Fustolo had refused to comply with this Court's Order and that such refusal was willful and intentional.  Moreover, Fustolo's intent may be inferred from his overall pattern of delay and obstruction in this proceeding, conduct which supported the imposition of the expedited trial date as a sanction against him.

Likewise, Fustolo willfully and intentionally failed to comply with the December 31st Order with respect to the production of documents to Patriot without legitimate excuse.  As the Court stated at the March 17, 2016 hearing:

> [H]e has failed to produce emails to Patriot which are not claimed to be protected by an applicable privilege, which are the subject of Patriot's first and second request. The production omits emails from -- for some of 2013 and 2014.
>
> The conclusion is inescapable that [the emails] have not been produced intentionally or have been deleted. Many of these emails are relevant to one or more counts of the multi-count complaint. Mr. Fustolo did produce approximately 12,000 pages of emails, many of which I find were not responsive to Patriot's request. The inference is warranted from the record of this discovery dispute that he deleted them, especially in light of his inconsistent and contrary representations about the emails. He at first stated that they were deleted by AOL when, in fact, he had them, . . .

Tr. at p 42.

The Court finds that Patriot has, through its introduction of the December 31st Order, the Memorandum and the transcript of the March 17, 2016 hearing, sustained its burden of showing by a preponderance of the evidence that Fustolo willfully and intentionally refused to obey a lawful order of this Court.  Fustolo failed to sustain his burden of explaining his non-compliance through his incredible and unsupported

testimony. *See generally* D'Agnese v. Cotsibas (In re Cotsibas), 262 B.R. 182 (Bankr. D.N.H. 2001) (court denied debtor's discharge on summary judgment pursuant to § 727(a)(6)(A) after inviting trustee to amend exception to discharge complaint against debtor to add a count under § 727(a)(6)(A) based on debtor's failure to comply with discovery orders); Concannon v. Costantini (In re Costantini), 201 B.R. 312, 316 (Bankr. M.D. Fla. 1996) (failure to timely produce discovery in an orderly, coherent fashion violates § 727(a)(6)(A) and may result in the denial of a debtor's discharge).

## VI.   CONCLUSION

For all of the above stated reasons, the Court concludes pursuant to Fed. R. Civ. P. 15(b)(2) that it must treat the claim under 11 U.S.C. § 727(a)(6)(A) as if it were raised in the Complaint, and that Fustolo's refusal to obey the December 31st Order warrants denial of his discharge under § 727(a)(6)(A).  The Court shall enter judgment in favor of Patriot.  A separate order shall enter. The remaining counts of the Complaint are moot.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: January 9, 2017