**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE STEVEN C. FUSTOLO<br><br>Debtor.<br><br>THE PATRIOT GROUP, LLC,<br><br>Plaintiff,<br>v.<br><br>STEVEN C. FUSTOLO,<br><br>Defendant. | Chapter 7<br><br>Case No. 13-12692-JNF<br><br>AP No.: 14-01193-JNF |

# PLAINTIFF THE PATRIOT GROUP, LLC'S MOTION FOR CLARIFICATION REGARDING THE BANKRUPTCY STAY

## INTRODUCTION

Out of caution, creditor/Plaintiff The Patriot Group, LLC ("Patriot") seeks a ruling from this Court that (a) two pending state court proceedings involving Debtor/Defendant Steven C. Fustolo ("Fustolo") fall outside the scope of the bankruptcy automatic stay (11 U.S.C. Section 362(a)) or, alternatively, (b) stay relief.[1] One state court action involves claims against Jeffrey H. Zeizel, an accomplice to Fustolo's 2014 defamation campaign against Patriot and its principal (with which this Court is aware) (the "Zeizel Action"). Fustolo has been impleaded by Zeizel for indemnity or contribution.

After conferring, the Parties agree that the Zeizel Action should proceed, but Patriot requests the Court's guidance regarding the stay given the nexus between (a) the defamation campaign (falsely claiming Patriot retaliated against Fustolo as a whistleblower) is at the heart of

[1] On July 16, 2018, the United States Court of Appeals for the First Circuit ("First Circuit") reversed and remanded the Court's Order denying Fustolo his bankruptcy discharge. *See* D.E. 370. As this matter is once again before this Court, Patriot is concerned with the potential impact of the bankruptcy stay on litigation that was initiated after the Order denying Fustolo's discharge was issued.

the Zeizel Action and (b) Fustolo's Schedule B listed a bankruptcy estate ("Estate") asset of a pre-petition "whistleblower claim" of "unknown" value, which was the subject of Patriot's Count IV in the 2016 adversary proceeding trial. In short, the Zeizel Action and bankruptcy are factually linked, which causes Patriot pause. A mistaken ruling by the state court concerning the stay could waste resources and cause harm. A clarifying ruling from this Court, however, would militate against those risks.

Patriot also seeks to hold Fustolo in civil contempt for his post-petition and post-denial of discharge failure to comply with a state court injunction (the "Contempt Action"). Superior Court Judge Thomas Billings has already heard three (3) days of trial testimony - - only two witnesses remain. Any fines, damages, or penalties that Fustolo may incur as a result of his civil contempt would be paid from Fustolo's "personal services" businesses and other non-Estate assets. Fustolo's adjudicated violation of the state court's injunction, if any, would not implicate the stay, the Estate or any of its assets. Patriot should be permitted to finish the trial and obtain a ruling.

Prior to filing this motion, Patriot sought the position of the Estate's Trustee (Harold Murphy) vis-à-vis this motion given (a) the Estate's complete settlement with Fustolo, (b) the Estate's granting broad general releases of liability to Fustolo and abandonment of former Estate assets, and (c) the absence of competition between the Trustee and Patriot to obtain Estate assets. The Trustee has not expressed any opposition to Patriot's request.

For these reasons, and those stated below, Patriot requests that the Court declare that (a) the Zeizel Action is not subject to the automatic stay; (b) the Contempt trial may be completed; alternatively (c) Patriot may have relief from the stay concerning the state court actions.

## BACKGROUND

**The Bankruptcy and Adversary Proceedings**

The Court is familiar with the background to Fustolo's involuntary Chapter 7 bankruptcy filed on May 6, 2013 and, therefore, Patriot only wishes to highlight a few salient points.

Fustolo's bankruptcy schedules were amended in August 2014 to list on "Schedule B" a "whistleblower recovery" of "unknown" value. *See In re Fustolo,* C.A. No. 13-12692 ("Ch. 7 Proc.") D.E. 172. Indeed, Fustolo claims that the involuntary Chapter 7 Proceeding was filed in retaliation for this supposed whistleblower activity which occurred at some unidentified time prior to the petition. *See* May 9, 2014 letter from Bruce Edmands to Michael Fencer, attached hereto as Exhibit A:

> Having previously informed a Patriot representative of his intention to notify the Internal Revenue Service of Patriot's alleged tax fraud, Mr. Fustolo has come to believe and now alleges that Patriot and its principal, John Howe, abused and will continue to abuse the bankruptcy proceedings as a means to retaliate against him for reporting Patriot's tax violations. More particularly, Mr. Fustolo alleges that with advance knowledge of Mr. Fustolo's pending IRS filings, Patriot and John Howe, personally, embarked on a campaign to harass and intimidate him and destroy his reputation by filing a petition for involuntary bankruptcy under Section 303(b) of the Bankruptcy Code.

*See* Ex. A.

Fustolo's listing of the "whistleblower" "asset" on his bankruptcy schedules in August 2014 (the exact period when defamation against Patriot appeared on the internet) was the focus of acrimonious dispute between the parties, including a partial summary judgment motion and argument at the 2016 trial of this matter. D.E. 53; 54.[2]

---

[2] In short, beginning in August 2014, postings on the internet appeared accusing Patriot and its principal of tax and securities fraud and retaliating against a "Boston" whistleblower. The August 2014 posts continued into the fall of 2014 and beyond and spread across the internet. Patriot has expended considerable resources ameliorating the

Patriot's contention is that the listing of the "asset" is a fraudulent assertion (false oath) because Fustolo invented the claim as cover for his internet campaign of falsely alleging that Patriot retaliated against him for tax and securities fraud whistleblowing. *See* 11 U.S.C. § 727(a)(4) (The details of Patriot's assertions and the nexus between the "whistleblower" recovery and the defamation are set forth in Patriot's Proposed Findings of Fact and Conclusions of Law submitted in the denial of discharge adversary proceeding ("Dis. Proc.")). *See* Dis. Proc. D.E. 306.

In addition to the main bankruptcy action, Patriot filed two adversary complaints and the Trustee (Harold Murphy) filed his own action. Patriot's actions sought to (a) deny Fustolo his discharge on multiple 11 U.S.C. Section 727 and 11 U.S.C. 523(a) grounds;[3] and (b) obtain injunctive relief to force Fustolo to stop and ameliorate his defamation. *See generally* Dis. Proc.; *The Patriot Group, LLC v. Steven C. Fustolo*, A.P. No. 15-01015 ("Def. Proc.").

In the Defamation Proceeding, the Court granted Patriot injunctive relief and held Fustolo in contempt for failing to remove certain defamatory posts. *See* Def. Proc. D.E. 60. Ultimately, the Court dismissed the defamation adversary for lack of jurisdiction. *See Id.* 104; 105.

**<u>The Trustee Adversary Proceeding and Settlement</u>**

The Trustee's action sought return of Estate assets, including cash, real estate and certain "stones." *See Murphy v. Fustolo, et. al.,* ("Trustee A.P.") A.P. No. 14-01222 (Bankr. D. Mass. 2015). As explained below, the Trustee ultimately settled his action against Fustolo and abandoned a number of Estate assets in exchange for a cash payment. *See* Ch. 7 Proc. D.E. 304; 304-1.

---

defamation. The Commonwealth has indicted Fustolo for his conduct and his latest efforts to delay his criminal trial were denied on July 2018. Fustolo stands to be tried in the coming months on two felony counts.

[3] The Court is familiar with the denial of discharge adversary proceeding, the details of which are summarized in Patriot's Proposed Findings of Fact and Conclusions of Law. (Dis. Proc. D.E. 306).

On September 23, 2016, the Trustee and Fustolo settled the Trustee A.P. *See* Ch. 7 Proc. D.E. 304. Fustolo paid the Estate $200,000. *Id.* In return the Estate granted Fustolo, his wife, father, and business partner (Steven Robinson) a broad general release and abandoned certain assets which included Fustolo's interest in: CPE Meetings, Inc., Fustolo CPE, LLC, National Tax Institute, Inc., and James J. Fox & Company LLP. *See* Ch. 7 Proc. D.E. 304-1.

Among the abandoned assets include Fustolo's "personal services" business (Fustolo CPE, LLC) through which he operates his "resort seminar business" providing continuing tax-related education to accountants and other professionals. *Id*. Further, the one-year "claw back" allowing the Trustee additional time to pursue assets and set aside the settlement has passed. *See* Ch.7 Proc. D.E. 304. In short, the Estate has obtained its recovery and released Fustolo.

On August 10, 2018, Patriot sent the Trustee a letter explaining its position regarding the Zeizel and Contempt Actions. *See* Exhibit B attached hereto.

**<u>The Zeizel Action</u>**

On May 23, 2017, Patriot sued Zeizel alleging that he aided and abetted Fustolo's defamation campaign.[4] *See The Patriot Group, LLC v. Jeffrey Zeizel,* Middlesex Superior Court C.A. No. 1781-cv-01557 ("Zeizel Dkt.") No. 1, case docket attached hereto as Exhibit C. Zeizel does not dispute assisting Fustolo by paying a specialist in August 2014 to disseminate defamatory material via the internet. Rather, he claims no awareness of the purpose of the payment. Zeizel filed a motion to dismiss pursuant to Mass. R. Civ. P. 12(b)(6), which was denied by the Court. Ex. C No. 18. The case is in discovery. *See generally* Ex. C.

[4] After this Court dismissed the defamation adversary proceeding, Old Hill Partners and John Howe filed a lawsuit in Florida to pursue the defamation claims. In March, 2018, Fustolo was adjudicated in contempt of various Florida Orders requiring him to remove his defamatory posts. Discovery in that action also revealed that Jeffrey Zeizel helped Fustolo facilitate a payment to an internet specialist to post the defamatory content. The internet specialist in turn has produced drafts of defamatory articles with metadata confirming Fustolo was their author. (*e.g*., "created by" Steven Fustolo). *See also Commonwealth v. Fustolo*, Nos. 1781CR00444; 1781CR00467, Memorandum of Decision and Order on Defendant's Motion to Dismiss and Motion to Suppress, Dkt. No. 10 at 6 ("Crim. Mem.") ("Metadata retrieved from several of the [defamatory] articles … revealed the author's name as "Steven Fustolo.").

On February 20, 2018, Zeizel filed a third-party complaint against Fustolo, alleging that Fustolo never informed Zeizel of the purpose of the payment or the defamation campaign. Ex. C No. 20. Zeizel asserts claims for indemnification, contribution, and misrepresentation and deceit against Fustolo. Fustolo has not yet filed an answer to Zeizel's third-party complaint.

On July 18, 2018, the parties informed the state court that a stay of the case was appropriate given the First Circuit's opinion. Ex. C No. 30.

On August 10, 2018, Fustolo served Patriot under Massachusetts Superior Court Rule 9A with a motion asking the state court to rule that Section 362(a)'s automatic stay does not apply and allow the case to proceed. *See* Exhibit D attached hereto.[5]

**<u>The Contempt Action and Pending Trial</u>**

In September 2017 - - at a time when the automatic stay did not apply - - Patriot filed the Contempt Action to address Fustolo's violations of a state court injunction which constrained Fustolo's ability to transfer, spend, or dissipate assets personally or through various companies. *See The Patriot Group, LLC v. Steven C. Fustolo*, Middlesex Superior Court C.A. No. 1081-cv-00529 ("Contempt Dkt.") No. 46, case docket attached hereto as Exhibit E.

After limited discovery, trial in the Contempt Action began on May 16, 2018, and continued on May 17 and 18, 2018. Ex. E. Patriot has put on the majority of its case-in-chief, and has one witness remaining to testify. Fustolo indicated to the state court that he plans to call a maximum of two witnesses in his case.

The state court scheduled trial to resume on June 27, 2018. Ex. E. On June 18, 2018, Fustolo filed an emergency motion to continue the trial. Ex. E No. 67. Fustolo's motion to continue was granted, and trial was re-scheduled to resume on August 27, 2018. Ex. E. After

---

[5] Fustolo's counsel in the Zeizel Action made a brief appearance in this matter to seek the Court's recusal from the case for bias. (D.E. 194).

the First Circuit decision was issued, Patriot informed the state court regarding the potential implications of the automatic bankruptcy stay. Ex. E No. 69.[6]

## ARGUMENT

### I. The Court Should Clarify that the Automatic Stay Does Not Apply to the Zeizel Action or Contempt Trial or Rule that Stay Relief is Appropriate

11 U.S.C. § 362(a) establishes an automatic stay to protect debtors from actions taken by creditors during the pendency of bankruptcy. *See In re Panek*, 402 B.R. 71, 76 (Bankr. D. Mass. 2009) (automatic stay "enables debtors to resolve their debts in a more orderly fashion, and at the same time safeguard their creditors"); *Hannon v. City of Newton*, 2018 U.S. Dist. LEXIS 79613,*22 (D. Mass. 2018). Creditors involved in litigation with a debtor should be careful about proceeding further once a stay is or may be in effect. *See Moving for RAS in Bankruptcy* § 2.1 (2006):

> Under 11 U.S.C. § 362(a), the automatic stay applies to virtually every creditor of the debtor and lienholder on the debtor's property--with some strictly circumscribed exceptions discussed below--and a very broad range of activities. You should therefore begin your efforts to protect your client from the effects of the automatic stay by assuming that it applies to your client. You should especially caution the client against activities that may be construed as a violation of the automatic stay.

*Cf. Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 975 (1st Cir. 1997) ("we are aware of no reason why that salutary principle would not apply with equal vigor to our assessment of a state court's actions when the underlying question relates to the effect of those actions under *federal law* . . . we decline to adopt the label that the state court judge chose in hindsight to affix to her activities") (reversing state court determination that default judgment did not violate automatic stay) (emphasis added). Violations of the automatic stay are subject to

[6] The state court has since cancelled the August 27, 2018 continued trial date. On September 12, 2018, the parties are scheduled to appear for a status conference. Ex. E.

sanction. *See Gordon v. White, (In re Morgenstern),* 542 B.R. 650, 659 (Bankr. D.N.H. 2015) (intentional violations of automatic stay subject to sanctions). Actions in furtherance of a violation are void. *See In re Smith Corset Shops, Inc*., 696 F. 2d 971, 976 (1st Cir. 1982) ("it is settled that proceedings in violation of the stay are void").

Relief from stay may be granted for "cause" and may be appropriate where the debtor consents to the relief or where the contemplated actions do not appear to affect property of the estate or implicate the estate's rights. *See Grella v. Salem Five Cent Sav. Bank,* 42 F. 3d 26, 31 (1st Cir. 1994) (citing 11 U.S.C. § 362(d)).

Patriot seeks the Court's assistance as a precautionary matter to (a) ensure that there is no Section 362(a) violation and (b) allow the Zeizel Action and Contempt trial to proceed. As explained below, the Court should rule that those proceedings fall outside the automatic stay's scope or, alternatively, grant Patriot stay relief.

### A. The Court Should Rule that the Zeizel Action's Prosecution Will Not Violate the Automatic Stay

Generally, the automatic stay applies to pre-petition activity and actions affecting estate property. *See In re Farnsworth,* 2008 Bankr. LEXIS 3373, *6 (Bankr. D. Mass. 2008) (section 362(a)(6) prevents any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title). Here, the Zeizel Action has a nexus to property of Fustolo's Estate and at least warrants the precaution of seeking this Court's review as it is largely premised on the same set of pre-petition facts which caused Fustolo to list a pre-petition "whistleblower" recovery on his Schedule B. In other words, a critical issue in the Zeizel Action is whether the underlying facts supporting Fustolo's "whistleblower" claim are real - - or were wholly invented and constitute defamation.

Despite this factual connection, multiple specifics suggest that the automatic stay does

not apply, including: (a) the Zeizel Action is not aimed at Fustolo; (b) Patriot is asserting claims against a Fustolo accomplice (Zeizel); (c) Zeizel (a non-creditor) is asserting indemnity type claims against Fustolo; (d) Patriot's recovery, if any, would come from Zeizel, not Fustolo; (e) the Trustee has released the Estate's claims against Fustolo; (f) the "claw back" in the Trustee's settlement with Fustolo has expired; and (g) Patriot is not competing with the Estate for recoveries. The combination of these factors suggests that the stay does not apply.

Further, Fustolo expressly *wants* the Zeizel Action to proceed. *See* Ex. D at 7 ("The automatic stay is not designed to protect a plaintiff (creditor) against a defendant (debtor) who actually seeks to *expedite* the proceedings in the case against him, such as here.") (emphasis in original); *see also* August 14, 2018 email between counsel, attached hereto as Exhibit F. Fustolo is eager for the Zeizel case to continue because he is desperate: his criminal proceeding is looming and he hopes discovery will pressure his victims (Patriot) into somehow capitulating before he is criminally tried. In essence, Fustolo is hoping for a silver bullet to prevent his criminal conviction:

> The Commonwealth presented evidence demonstrating that the defendant engaged in a knowing pattern of conduct and speech; that he intended his articles to target Howe and his companies; that the nature and content of these articles seriously alarmed Howe; that the nature and content of these articles would cause a reasonable person to suffer substantial emotional distress; and that the defendant wrote these false articles and disseminated them willfully and maliciously.

*See* Crim. Mem. at 12.

Patriot is equally interested in completing the Zeizel matter and, therefore, both parties welcome the opportunity for the case to continue. *See* Ex. D at 2 ("[Zeizel] does not object to the lifting of the stay and [Fustolo] (whom the stay is designed to protect) seeks to have the litigation proceed without further delay."). As such, the Court should rule that the Zeizel Action

falls outside of Section 362(a)'s scope.

**B. The Court Should Allow the Contempt Trial to Finish**

The Contempt Action involves Fustolo's continued failure to comply with a state court injunction issued in connection with Fustolo's debt to Patriot. *See The Patriot Group, LLC v. Steven C. Fustolo*, Middlesex Superior Court C.A. No. 1081-cv-00529 ("Contempt Dkt.") No. 46. Patriot initiated the Contempt Action after Fustolo failed to bring himself into compliance when this Court denied his discharge January 9, 2017. *Id*. Notably, Patriot gave Fustolo eight months (*i.e.*, from January 2017 - - when the Court denied his discharge - - to September 2017 - - when the complaint was filed) to comply with the injunction before initiating the Contempt Action.

Further, Fustolo's contempt included post-petition violations and does not impact Estate assets. The trial simply seeks to establish that Fustolo failed to obey a court Order. Any payments or fines Fustolo incurs from an adjudicated violation will come from non-Estate assets. In short, there is no effect on (a) the underlying debt or (b) its collectability and, in light of the Trustee settlement, (c) no competition whatsoever between Patriot and the Estate for recoveries.[7]

The trial, moreover, is almost complete. *See* Ex. E. The Parties should be permitted to conclude the trial and have the state court adjudicate (a) whether and to what extent Fustolo violated its order and (b) the impact of his violation (all of which are separate from any bankruptcy issue). There are no anticipated consequences that would negatively impact the Estate. Further, a trial victory would not allow Patriot further collection on the underlying debt *unless and until* this Court denies his discharge. In sum, the integrity of the debt and its status quo remains intact regardless of Fustolo's contempt.

---

[7] Patriot contacted Fustolo's counsel pursuant to Local Rule 9013-1(b) and was informed that Fustolo opposes Patriot's motion as it applies to the Contempt Action.

### C. Good Cause Warrants Relief

Patriot will not belabor the point: for the reasons stated above, good cause exists to grant Patriot relief from the stay to pursue the Zeizel Action and complete the Contempt trial.

The bankruptcy process for Fustolo is basically at an end. The only remaining issue is whether the Court will deny his discharge. Fustolo and the Trustee have settled, and the time for the Estate to collect is over. Neither the Zeizel Action nor the Contempt Action materially impacts the Estate or its property. The parties want to continue their litigation in state court while the Court decides if and whether to rule on the remaining counts of Patriot's denial of discharge adversary complaint. *See* Dis. Proc. D.E. 366. The Court should grant the relief Patriot seeks.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Patriot requests that the Court grant its motion.

Respectfully submitted,

THE PATRIOT GROUP, LLC

By its attorneys,

/s/ Jack. I Siegal
Jack I. Siegal BBO #669173
jsiegal@grsm.com
Michael P. Burke BBO #682796
mburke@grsm.com
857-263-2000
GORDON REES SCULLY MANSUKHANI, LLP
21 Custom House Street, 5th Floor
Boston, MA 02110

Dated: August 16, 2018

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 9013-1(b)

On August 14, 2018, the Parties met and conferred in a reasonable and good faith effort to determine whether the motion is unopposed. Counsel for Fustolo indicated that the motion will be opposed in part.

/s/ Jack I. Siegal
Jack I. Siegal

## CERTIFICATE OF SERVICE

I, Jack I. Siegal, certify that a copy of the above-referenced document was served by the CM/ECF filing system on all counsel of record on August 16, 2018.

/s/ Jack I. Siegal
Jack I. Siegal