# EXHIBIT D

**COMMONWEALTH OF MASSACHUSETTS**

MIDDLESEX, SS.

SUPERIOR COURT DEPARTMENT
DOCKET NO. 1781-CV-01557

THE PATRIOT GROUP, LLC,

Plaintiff

v.

JEFFREY ZEIZEL,

Defendant
and Third-Party Plaintiff

v.

STEVEN C. FUSTOLO

Third-Party Defendant

**THIRD-PARTY DEFENDANT STEVEN FUSTOLO'S MEMORANDUM OF LAW <u>IN SUPPORT OF MOTION TO LIFT VOLUNTARY STAY</u>**

***"The lady doth protest too much, methinks."***

Hamlet Act 3, scene 2, 222–230

## <u>INTRODUCTION</u>

The present action involves claims for aiding and abetting defamation and conspiracy to defame brought by Plaintiff The Patriot Group, LLC ("Patriot") against Defendant Jeffrey Zeizel ("Mr. Zeizel.") Mr. Zeizel, in turn, brought a third-party complaint against Steven Fustolo ("Mr. Fustolo"), alleging contribution, indemnification, and misrepresentations, all in connection with Patriot's claims. On their face, all of the claims made in this case are based on actions alleged to have occurred more than one year after the filing of an involuntary bankruptcy by Patriot and other creditors against Mr. Fustolo. Consequently, the claims in this case have no bearing on the bankruptcy case and are not subject to any bankruptcy stay.

As is discussed in detail, below, Patriot and Mr. Fustolo have a long litigation history that spans ten years and includes an involuntary bankruptcy petition filed in the Federal Bankruptcy Court for the District of Massachusetts; a subsequent appeal to the First Circuit Court of Appeal that resulted in a reversal and remand back to the Bankruptcy Court; two Middlesex Superior Court actions, each of which relates to pre-petition debts of Mr. Fustolo to Patriot; and the present matter before this court. Unlike the two Middlesex Superior Court Actions, none of the claims or third-party claims raised in this matter have anything to do with the pre-petition debts and, indeed, the Verified Complaint and Third-Party Complaint each allege only post-petition conduct.

Following the First Circuit's reversal and remand to the Bankruptcy Court, Patriot's counsel suggested that the parties move for a stay in all of the pending Middlesex actions. Wanting to assess the ramifications of the First Circuit remand, Mr. Fustolo's bankruptcy counsel assented to the filing of a motion to stay but only "until such other appropriate time," and only "as applicable."

Mr. Fustolo now seeks to have the voluntary stay entered by this Court pursuant to the agreement of the parties lifted so that the matter may be litigated without further delay. The Defendant and Third-Party Plaintiff, Mr. Zeizel, has indicated through counsel that he neither objects to, nor assents to the present motion.

In a truly bizarre turn of events, however, Patriot has objected to the lifting of the voluntary stay, refusing to proceed with the litigation that it itself initiated, despite the fact that the Defendant does not object to the lifting of the stay and the Third-Party Defendant (whom the stay is designed to protect) seeks to have the litigation proceed without further delay.[1]

[1] Mr. Fustolo can only assume that Patriot is attempting to avoid responding to his discovery requests. Much of the discovery is aimed at proving the truth of the allegedly defamatory statements and Plaintiff's alleged damages.

Because the present action is not implicated by the Bankruptcy Court's automatic stay and because the stay in the present action was entered only because the parties had agreed to the same, Mr. Fustolo now moves for the voluntary stay entered by the Court to be lifted. In further support of his motion, Mr. Fustolo states as follows.

**FACTS**

In May of 2011, Patriot obtained a state court judgment against Mr. Fustolo of over $20 million (the "Patriot Judgment"). *Fustolo v. Patriot Grp., LLC (In re Fustolo)*, 2017 U.S. Dist. LEXIS 143771, at *1 (D. Mass. Sep. 6, 2017). The Patriot Judgment was obtained in a Middlesex Court Action captioned *The Patriot Group, LLC v. Steven C. Fustolo*, Docket No. 10-CV-00529 (the "Original Action").

On May 6, 2013, Patriot and other creditors filed an involuntary bankruptcy petition against Mr. Fustolo. *Id.* and Verified Complaint, ¶19. On September 30, 2014, Patriot filed a complaint against Fustolo seeking a denial of discharge of his debt in bankruptcy. *In re Fustolo* at *1.

One year after the initiation of the bankruptcy proceedings, on May 9, 2014, Mr. Fustolo's then-counsel sent a letter to Patriot's counsel "accusing Patriot of tax fraud and retaliation." Verified Complaint, ¶23. Patriot alleges that the allegations contained in this letter were defamatory.[2] Verified Complaint, ¶¶24. According to Patriot's Verified Complaint, three months after that, Mr. Zeizel engaged in an allegedly wrongful act, by making a payment to a

[2] Shockingly, as part of an apparent campaign to punish Mr. Fustolo's friends and advisors, Patriot brought an action against Mr. Fustolo's lawyer, Bruce Edmands, and his firm for having sent this letter. *See The Patriot Group, LLC v. Bruce Edmands, et al.*, Docket No. 17-01078 (Middlesex Superior Court). On August 31, 2017, Judge William Barrett allowed Defendants' Motion to Dismiss, finding that certain allegations contained in the letter were protected by the absolute litigation privilege and, to the extent there were statements that were not protected by the privilege, the allegations of aiding and abetting defamation and civil conspiracy (the same claims alleged here against Mr. Zeizel), nevertheless should be dismissed as there was no evidence that the Defendants had provided substantial assistance to Mr. Fustolo in the alleged defamation.

blogger at Mr. Fustolo's request. Verified Complaint, ¶¶33-34. Also according to the Verified Complaint, the blogger - allegedly at Mr. Fustolo's direction – published defamatory articles concerning the allegations made in the May 9, 2014 letter. Verified Complaint, ¶¶28-30.

On January 9, 2017, the Bankruptcy Court entered its judgment in favor of Patriot, denying Mr. Fustolo a discharge of the Patriot Judgment. Mr. Fustolo appealed the Bankruptcy Court's Order and, on July 16, 2018, the First Circuit Court of Appeals reversed the Bankruptcy Court's Order and remanded for further proceedings. *See Fustolo v. Patriot Grp., LLC (In re Fustolo)*, 2018 U.S. App. LEXIS 19496, at *1 (1st Cir. 2018).

On May 10, 2017, following the Bankruptcy Court's entry of judgment (but before the First Circuit reversed the judgment), the Patriot Group initiated a collection action in Superior Court Action in Middlesex County against Mr. Fustolo and a number of different business entities, captioned *The Patriot Group, LLC v. Fustolo, et al.*, Docket No. 17-CV-1435 (the "First Middlesex Action"). In the First Middlesex Action, Patriot alleged, *inter alia*, that Mr. Fustolo had made fraudulent transfers in an attempt to thwart Patriot's attempts to collect the pre-petition judgment rendered in the Original Action.

On September 15, 2017, Patriot filed a second collection action pertaining to its pre-petition judgment. This action took the form of a complaint for civil contempt filed in the Original Action, alleging, generally, that Mr. Fustolo was acting in a manner that violated a permanent injunction in the Original Action in a manner designed to thwart Patriot's ability to collect on the pre-petition judgment in that case (the "Second Middlesex Action").

On or about May 23, 2017 – four years after it instituted the involuntary bankruptcy petition against Mr. Fustolo – Patriot filed the present action against Mr. Zeizel. Eight months after that (now a ***full five years*** from the filing of the Bankruptcy petition), Mr. Zeizel filed his

Third-Party Complaint against Mr. Fustolo, containing counts for Indemnification (Count I); Contribution (Count II); and Misrepresentation (Count III), all based on alleged actions occurring post-petition. Thus, to date, there are three civil actions pending in Middlesex Superior Court:

1. The First Middlesex Action, which alleges fraudulent transfers in an attempt to thwart the collection of Patriot's pre-petition claim, which is subject to stay under the bankruptcy code;

2. The Second Middlesex Action, which is a complaint for contempt involving the collection of Patriot's pre-petition claim which is subject to the stay under the bankruptcy code; and

3. The present action, which involvines alleged defamation occurring post-petition, to which the bankruptcy stay is not applicable.

Following the First Circuit's reversal of the Bankruptcy Court's judgment – and cognizant that the remand might implicate one or more of the pending Superior Court actions, including the Original Action, the First Middlesex Action; the Second Middlesex Action; and the present case– counsel for Patriot proposed to Mr. Fustolo's bankruptcy counsel that the parties voluntary stay the pending Superior Court actions. *See* Affidavit of William Moorman, attached as **Exhibit 1**. Mr. Moorman assented to the filing of requests for stays in the various actions, but only to the extent that it was "appropriate" and "applicable." *Id.*

On or about July 18, 2018, Patriot's counsel filed in this action (and in the other Middlesex actions) an assented-to request for a stay, asking that the "action, including all currently scheduled hearings" be stayed "until such other appropriate time, as applicable." On July 23, 2018, this Court, noting that the request was made "by agreement of the parties," allowed the motion for a stay.

On or about August 1, 2018, Mr. Fustolo engaged the undersigned counsel to represent him in the present matter. On August 7, 2018, the undersigned contacted Patriot's counsel

seeking to set aside the stay in this matter inasmuch as the Bankruptcy Court's automatic stay is not implicated in the present matter (unlike the other pending Middlesex actions). Counsel for Patriot indicated that he would not assent to the present motion, stating, *inter alia*, that the present matter "may be implicated by the Bankruptcy Stay" and that this Court was without jurisdiction to lift the voluntary stay that it had entered "by agreement of the parties."

Counsel for Mr. Zeizel has indicated that he neither opposes nor assents to the present motion.

## ARGUMENT

I. This Court Has Jurisdiction to Determine the Applicability of the Automatic Stay.

As a preliminary matter, this Court unquestionably has jurisdiction to determine whether the Bankruptcy Code's automatic stay applies to the present matter. *Beverly v. Bass River Golf Mgmt., Inc.*, 92 Mass. App. Ct. 595, 599 n.5 (2018)("We have concurrent jurisdiction with the Bankruptcy Court to determine the applicability of the automatic stay provisions of the Bankruptcy Code"), *citing Lombardo* v. *Gerard*, 32 Mass. App. Ct. 589, 593-594 (1992). *See also Garg v. Eresian*, 2011 Mass. App. Unpub. LEXIS 964, at *3-5 n.6 (App. Ct. Aug. 15, 2011)("We have concurrent jurisdiction with the Bankruptcy Court to determine the applicability of the automatic stay provision of the United States Bankruptcy Code, 11 U.S.C. § 362(a)"); In re Bona, 124 B.R. 11, 15 (S.D.N.Y. 1991)("The New Jersey Court had concurrent jurisdiction with the bankruptcy court to determine the applicability of the automatic stay: 'The court in which the litigation claimed to be stayed is pending has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the proceeding pending before it is subject to the automatic stay'")(multiple citations omitted).

Accordingly, this Court has jurisdiction to determine if the automatic stay provision of the United States Bankruptcy Court applies to the present action.

II. The Automatic Stay Is Not Applicable to This Matter.

Pursuant to 11 U.S.C., §362, upon the filing of a bankruptcy petition, certain actions pending against a debtor, arising out of pre-petition activities are automatically stayed. Specifically, "at the time the case is filed, the stay operates to halt 'the commencement or continuation . . . of a judicial . . . proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case . . . or to recover a claim against the debtor that **arose before the commencement of the [bankruptcy] case** . . . [or] any act to obtain possession of property of the estate . . . [or] any act to . . . enforce any lien against property of the estate. 11 U.S.C. §362(a).'" *Hannon v. City of Newton*, 2018 U.S. Dist. LEXIS 79613, at *22-23 (D. Mass. 2018). Thus, it is quite clear that 11 U.S.C. §362(a) does not apply to actions that are not part of the bankruptcy case, such as the one that is presently before this court.

The primary purpose of the automatic stay is to give "a debtor 'breathing room' from his creditors. 'It is designed to effect an immediate freeze of the status quo by precluding and nullifying post-petition actions, judicial or nonjudicial, in nonbankruptcy fora against the debtor or affecting the property of the estate.'" *Id.* at 23. The automatic stay is not designed to protect a plaintiff (creditor) against a defendant (debtor) who actually seeks to *expedite* the proceedings in a case against him, such as here.

The protections afforded to the debtor[3] by the automatic stay are limited, however, to those actions "that [were] or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . ." *Lombardo v. Gerard*, 32 Mass. App. Ct. 589, 594 (1992). The automatic stay has no application to matters that arise post-petition. *Id.* ("See *Taylor v. First Fed. Sav. & Loan Assn.*, 843 F.2d 153, 154 (3d Cir. 1988) ('the automatic stay is not intended to bar proceedings for post-petition claims that could not have been commenced before the petition was filed'); *Holland America Ins. Co. v. Succession of Roy*, 777 F.2d 992, 996 (5th Cir. 1985) ('the stay simply does not apply to post-bankruptcy events'); *Turner Bdcst. Sys., Inc. v. Sanyo Elec., Inc.*, 33 B.R. 996, 999-1000 (N.D. Ga. 1983) ('the plain language of the statute, the legislative history, the purposes for which the statute was enacted, and strong policy reasons all warrant the conclusion that section 362[a]'s automatic stay does not apply to a case commenced after a bankruptcy petition is filed')").

In the present case, Patriot and two other petitioning creditors initiated an involuntary bankruptcy proceeding against Mr. Fustolo on May 6, 2013. Verified Complaint, ¶19. ***One year later***, on May 9, 2014, Mr. Fustolo's then-counsel sent a letter to Patriot's counsel "accusing Patriot of tax fraud and retaliation." Verified Complaint, ¶23. Patriot alleges that the allegations contained in this letter were defamatory. Verified Complaint, ¶¶24. According to Patriot's Verified Complaint, ***three months after that***, Mr. Zeizel engaged in an allegedly wrongful act, by making a payment to a blogger at Mr. Fustolo's request. Verified Complaint, ¶¶33-34.

[3] It should not be lost on the Court that this Motion arises under a most unusual posture: the *Plaintiff* here is refusing to pursue its own claim, arguing for the continuation of a voluntarily-entered stay, that no other party seeks to continue. If the Plaintiff is so averse to prosecuting this action, there is a simple remedy: it can dismiss the matter entirely.

Not a single one of these alleged underlying actions took place prior to the filing of the involuntary bankruptcy proceeding against Mr. Fustolo. And, indeed, the Verified Complaint itself is not brought against Mr. Fustolo himself so, standing alone, there could not have been any applicability of the automatic stay to the Verified Complaint, which sounds only against non-debtor Jeffrey Zeizel.

***Three *years* later***, on or about May 23, 2017, Patriot filed the present action against Mr. Zeizel. Eight months after that (now a ***full five years*** from the filing of the Bankruptcy petition), Mr. Zeizel filed his Third-Party Complaint against Mr. Fustolo, containing counts for Indemnification (Count I); Contribution (Count II); and Misrepresentation (Count III).

With respect to Counts I and II, the "generally accepted and sensible rule" is that causes of action for indemnification and contribution accrue "when the potential indemnitee suffers loss by paying the injured person." *Wolverine Ins. Co. v. Tower Iron Works, Inc.*, 370 F.2d 700, 703 (1st Cir. 1966). Even if one were to look back to the filing of the Verified Complaint, the causes of action asserted by Mr. Zeizel against Mr. Fustolo post-date the bankruptcy action by a full four years. And, with respect to Count III, the misrepresentation claim, the actions giving rise to this claim are alleged to have taken place in August of 2014, fifteen months after the filing of the bankruptcy petition.

As is obvious, then, none of the claims alleged against Mr. Fustolo were "or could have been commenced before the commencement of the [bankruptcy] case" and, as such, the claims are not governed by the automatic stay provisions of the Bankruptcy Code. Additionally, as is obvious from the face of the Third-Party Complaint, none of the claims alleged against Mr. Fustolo in this case have anything at all to do with the *types* of actions covered by the automatic

stay, all of which deal (in one way or another) with attempts to collect on debts or claims which arose pre-petition. 11 U.S.C. §326(a).

As such, the claims in this action were never properly subject to the Bankruptcy Code's automatic stay and the voluntary stay endorsed by this Court should now be set aside.

**CONCLUSION**

For the reasons stated hereinabove, Mr. Fustolo respectfully moves that the voluntary stay endorsed by this Court be immediately lifted

Steven C. Fustolo,
By his attorney,

Evan Fray-Witzer (BBO#564349)
Evan@CFWLegal.com
Ciampa Fray-Witzer, LLP
20 Park Plaza, Suite 505
Boston, MA 02116
T: (617) 423-0000
F: (617) 507-8043

Dated: August 10, 2018

**CERTIFICATE OF SERVICE**

I, Evan Fray-Witzer, certify that on August 10, 2018, I caused a copy of the above document to be delivered by hand to all attorneys of record.

Evan Fray-Witzer

EXHIBIT 1

**COMMONWEALTH OF MASSACHUSETTS**

MIDDLESEX, SS.

SUPERIOR COURT DEPARTMENT
DOCKET NO. 1781-CV-01557

THE PATRIOT GROUP, LLC,

Plaintiff

v.

JEFFREY ZEIZEL,

Defendant
and Third-Party Plaintiff

v.

STEVEN C. FUSTOLO

Third-Party Defendant

AFFIDAVIT OF WILLIAM R. MOORMAN, JR., ESQ.

1. My name is William R. Moorman, Jr. Unless otherwise stated, I make this affidavit of my own personal knowledge.

2. I am an attorney in good standing admitted in the Commonwealth of Massachusetts.

3. I represent Steven Fustolo in a number of different actions including his Bankruptcy Court action and two other actions pending in the Middlesex Superior Court. Although I have not entered an appearance in the present matter, at the times relevant to this affidavit, I was representing Mr. Fustolo in the present matter as well.

4. On January 9, 2017, the Bankruptcy Court entered a judgment in favor of Patriot, denying Mr. Fustolo a discharge of a judgment that Patriot had obtained against him in a pre-petition suit. Mr. Fustolo appealed the Bankruptcy Court's Order and, on July 16, 2018, the First Circuit Court of Appeals reversed the Bankruptcy Court's Order and remanded for further proceedings.

5. Two hearings were scheduled in the two actions pending in the Middlesex Superior Court on the afternoon of July 18, 2018. Following the First Circuit's Order, Attorney Michael Burke, counsel for Patriot, contacted a clerk at the Middlesex Superior Court to inform the Court that he would like to take those hearings off the calendar. According to an email

communication between Attorney Burke and Attorney Paige V. Schroeder, an associate at my firm, the clerk asked that the parties send the Middlesex Superior Court an assented to motion to postpone the hearings indefinitely in light of the First Circuit's order.

6. On July 18, 2018, Attorney Burke sent Attorney Schroeder a draft of the "Assented to Notice of Decision and Request to Stay the Action Pending Resolution of Bankruptcy Matters" (the "Assented to Notice"), which I reviewed and suggested minor edits to.

7. I did not immediately have the ability to assess whether a stay would be appropriate in all of the pending matters, though I did know that we had pending hearings and other upcoming deadlines and that the Bankruptcy Court's automatic stay would be implicated in at least *some* of the other pending matters.

8. I assented to filing of the Assented to Notice; however, in doing so, I believed that, in accordance with the language of the Assented to Notice, I was agreeing to a stay until an "appropriate" time and only to the extent that such a stay was "applicable."

9. It was my understanding and belief that, just as the parties could voluntarily enter into this stay, the stay would thereafter no longer remain in effect if and to the extent it was no longer "applicable."

10. I do not believe that any stay is appropriate in the present matter as it arises entirely from post-petition conduct and is, therefore, not subject to the provisions of the automatic stay.

Signed under the pains and penalties of perjury this 10th day of August, 2018.

William R. Moorman, Jr., Esq.

3356691.1/13014-3